[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10825
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-60159-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DESHAWN GOPIE,
WAYNE ALEXANDER GOPIE,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 28, 2009)

Before DUBINA, Chief Judge, TJOFLAT and ANDERSON, Circuit Judges.

PER CURIAM:

Deshawn Gopie appeals his convictions and 87-month sentence for conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), 846; possession with intent to distribute 100 kilograms or more of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii); and possession with intent to distribute more than 50 kilograms of marijuana in a vehicle, in violation of 21 U.S.C. § 841(a)(1).

Deshawn's brother, Wayne Alexander Gopie, also appeals his convictions and 180-month sentence for conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), 846; and possession with intent to distribute 100 kilograms or more of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii).

## DISCUSSION

First, Deshawn and Wayne (collectively "Defendants") argue that the district court erred in denying their pre-trial motions to suppress. Second, Defendants argue that the district court abused its discretion in denying their motion for a new trial. Finally, each defendant raises issues related to sentencing.

I. <u>The Motions to Suppress</u>

Before trial, Defendants filed motions to suppress evidence discovered as the result of the investigatory stops of their respective vehicles. When considering a ruling on a motion to suppress, we generally accept the district court's findings of fact unless they are clearly erroneous and consider the court's application of the law to the facts de novo. United States v. Hromada, 49 F.3d 685, 688 (11th Cir. 1995). We construe the facts in the light most favorable to the party that prevailed in the district court. Id. At this point, it is helpful to set forth the relevant facts.

At the suppression hearing, Drug Enforcement Administration ("DEA") Agent Joseph Fernandez testified to the following events. On June 11, 2007, the DEA received an anonymous tip that Wayne was involved in an interstate drug trafficking operation. The DEA confirmed Wayne's identity, verified that he had a prior conviction for drug trafficking, and determined that he was associated with a residence in Weston, Florida ("the Residence"). On June 13, 2007, DEA agents placed the Residence under surveillance. The surveillance unit observed Deshawn and Wayne carrying uniformly-sized, wooden crates from a U-Haul truck into the Residence. The crates appeared to be heavy. Defendants then transferred large black trash bags, which also appeared to be heavy, from the Residence into an Infiniti vehicle. Agent Fernandez testified that based on his nine years of experience with the DEA this conduct was typical of marijuana drug trafficking.

3

Subsequently, agents observed the U-Haul and the Infiniti leave the Residence together. Wayne drove the U-Haul and Deshawn drove the Infiniti. The vehicles proceeded in tandem, pulled up next to each other to converse, and then split off. The Infiniti then appeared to engage in counter-surveillance maneuvers. Agent Fernandez testified that in his experience counter-surveillance measures are an indicator of criminal activity. At that point, Agent Fernandez ordered the stop of both vehicles.

Deputy Marshal Mark O'Loughlin, an officer involved in the stop of the Infiniti, also testified at the suppression hearing. O'Loughlin stated that he could not recall the drivers of the vehicles conversing; however, he observed the Infiniti make four consecutive right hand turns, then cross three lanes of traffic to make a U-turn. O'Loughlin testified that based on his eleven years of experience with the U.S. Marshal Service these maneuvers were consistent with counter-surveillance. Furthermore, O'Loughlin testified that in his experience counter-surveillance measures are an indicator of criminal activity.

O'Loughlin also stated that as he approach the Infiniti he observed a gun lying in plain view on the driver's side floor mat of the Infiniti. He testified that none of the officers asked Deshawn if there was a gun in the car. On cross-examination, the defense introduced into evidence a tape recording of an officer

4

asking Deshawn if there was a gun in the car and an individual responding: "I've got a Glock under the seat." A photograph of the scene demonstrated that the handgun was on the floorboard of the Infiniti with the barrel partially under the seat and the remainder of the gun visible.

Agent Rice, another officer involved in the stop of the Infiniti, testified that he observed the U-Haul and the Infiniti pull up side-by-side to converse. After the vehicles split up, Agent Rice initially followed the U-Haul until he was instructed to stay on the Infiniti. Rice testified that he lost sight of the Infiniti for approximately thirty seconds. He did not see the Infiniti make a series of right turns. When he rejoined surveillance on the Infiniti it was about to execute a U-turn.

Having set forth the relevant facts, we turn to Defendants' arguments. First, Deshawn argues that the district court abused its discretion by failing to hold a de novo suppression hearing.[1] The magistrate's report and recommendation deemed Deputy Marshall O'Loughlin's testimony regarding the counter-surveillance measures taken by the Infiniti "fully credible," despite inconsistencies in his own

---

[1]     Under 28 U.S.C. § 636(b)(1)(B), a district court may designate a magistrate to conduct an evidentiary hearing and submit proposed findings of fact and recommendations for disposition. However, if a party makes timely objections to the magistrate's proposed findings and recommendations, the district court must make a de novo review of the magistrate's report with respect to the findings to which the party objects. 28 U.S.C. § 636(b)(1). While § 636(b)(1) does not require a new hearing, it does require "independent consideration of factual issues based on the record." Jeffrey S. v. State Bd. of Educ. of State of Ga., 896 F.2d 507, 512-13 (11th Cir. 1990).

testimony and inconsistencies with the testimony of other officers. Deshawn points to three facts: (1) O'Loughlin did not accurately recall whether officers asked Deshawn if there was a gun in the car; (2) O'Loughlin could not recall the drivers of the vehicles conversing; and (3) Rice did not observe the series of four right hand turns allegedly taken by the Infiniti.

After review of the record, we discern no abuse of discretion. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). As the magistrate's report accurately notes, Agent Fernandez corroborated O'Loughlin's testimony by stating that he received radio reports of counter-surveillance measures before ordering the stop. Furthermore, Agent Rice testified that he lost sight of the Infiniti during the time when O'Loughlin observed the series of right turns. Accordingly, the district court did not abuse its discretion by failing to hold a de novo suppression hearing.

Second, Defendants argue that law enforcement officers did not have a reasonable suspicion that the individuals in the Infiniti or the U-Haul had engaged in, or were about to engage in, criminal activity.

> Law enforcement officers may detain a person briefly for an
> investigatory stop if they have a reasonable, articulable suspicion based

on objective facts that the person has engaged in, or is about to engage in, criminal activity. The "reasonable suspicion" must be more than an inchoate and unparticularized suspicion or hunch. Reasonable suspicion is determined from the totality of circumstances and collective knowledge of the officers.

United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir. 2006) (internal citations and quotations omitted). "A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." United States v. Gordon, 231 F.3d 750, 754 (11th Cir. 2000). "[W]e view the totality of the circumstances in the light of the officers' special training and experience." United States v. Smith, 201 F.3d 1317, 1323 (11th Cir. 2000). "We also bear in mind that behavior, seemingly innocuous to the ordinary citizen, may appear suspect to one familiar with the practices of narcotics couriers." Id. (internal quotations omitted).

Officers were aware that Wayne had a prior drug trafficking conviction. Based on his experience and training, Agent Fernandez testified that the activities at the Residence were typical of marijuana drug trafficking. Furthermore, both Fernandez and O'Laughlin testifed that counter-surveillance measures were indicative of criminal behavior. Accordingly, we conclude that officers had a reasonable, articulable suspicion that the individuals in the U-Haul and the Infiniti were engaged in criminal activity.[2]

---

[2]    Deshawn's reliance on United States v. Valdez, 931 F.2d 1448 (11th Cir. 1991), is misplaced. Valdez held only that the traffic stop at issue was pretextual. Id. at 1452. The

7

Third, Wayne argues, for the first time on appeal, that the stop of the U-Haul was longer than permitted for a brief investigative stop.[3] "[W]hen the totality of the circumstances indicate that an encounter has become too intrusive to classify as a brief seizure, the encounter is an arrest and probable cause is required." United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11th Cir. 1986). The proper inquiry is "whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004) (internal quotations and brackets omitted). When evaluating whether the duration of an investigative detention is unreasonable, the Supreme Court has indicated that "common sense and ordinary human experience must govern over rigid criteria." United States v. Sharpe, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985).

Upon review of the record, we discern no plain error. Wayne points to the

Court expressed no opinion on the existence of probable cause (or reasonable suspicion) to stop Valdez for violation of the narcotics laws. Id.

Defendants' arguments regarding the anonymous tip are similarly inapposite. Here, the district court concluded that Defendants' conduct itself gave rise to a reasonable, articulable suspicion of criminal activity.

[3] When an issue is raised for the first time on appeal, we review for plain error. See United States v. Shelton, 400 F.3d 1325, 1328-29 (11th Cir. 2005). Under the plain error standard, we may not reverse unless there is (1) error, (2) that is plain, and (3) that affects substantial rights. Id. If these three conditions are met, we then may reverse only if "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1329 (internal quotations and citation omitted).

8

following circumstances: (1) he was ordered out of the truck and patted down; (2) he was asked to wait on the curb; (3) he was asked to lie on the ground and patted down by additional officers; and (4) a narcotics-trained canine officer was brought to the scene. We conclude that, on the facts of this case, these actions were reasonable in light of the need to maintain the safety of the officers and the integrity of the ongoing investigation. See United States v. Gil, 204 F.3d 1347, 1350-51 (11th Cir. 2000) (concluding, in a drug conspiracy case, that a Terry stop did not ripen into an arrest when officers handcuffed the defendant and detained her in the back of a patrol car for seventy-five minutes because such actions were necessary for the safety of the officers and the ongoing investigation). Accordingly, we conclude that the stop of the U-Haul was not longer than permitted for an investigatory stop.

Finally, Wayne argues that his consent to search the U-Haul was not voluntary. Specifically, Wayne points to the following factors: (1) the U-Haul was stopped and approached by law enforcement officers with firearms unholstered and prepared to fire; (2) Wayne was patted down and ordered to remain on the ground until additional officers arrived; and (3) once the other officers arrived, Wayne was searched again and forced to spread out on the ground. Under these circumstances, Wayne asserts that he believed that he could not refuse law enforcement's request

9

to search.

"A district court's determination that consent was voluntary is a finding of fact, that will not be disturbed on appeal absent clear error." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). A consensual search is constitutional if it is voluntary, which means it is the product of an "essentially free and unconstrained choice." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quotation omitted). "The government bears the burden of proving . . . that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir. 1993).

The question of whether consent is voluntary is based on the totality of the circumstances. Id.

> [T]he court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.

Purcell, 236 F.3d at 1281. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 2048 (1973).

In the instant case, the magistrate judge stated:

[T]here is no evidence that Wayne Gopie suffers from a lack of education or low intelligence. He had been detained only minutes and had not been questioned. He was not handcuffed and had not been placed under arrest, although he had been patted down for weapons twice. No threats had been made and no punishment inflicted.

Although firearms were drawn as officers approached the U-Haul, they were quickly reholstered before Wayne exited the vehicle. The magistrate judge concluded: "Wayne Gopie's consent to search the U-Haul was the product of free and unconstrained choice." We discern no clear error. See United States v. Espinosa-Orlando, 704 F.2d 507, 512-13 (11th Cir. 1983) (finding consent voluntary where officers asked the defendant, in a normal conversational tone without any threats, for consent to search his vehicle while the defendant was lying on the ground).[4]

Accordingly, we conclude that the district court did not abuse its discretion to deny Defendants' pre-trial motions to suppress.

II. Defendants' Motion for a New Trial

Defendants argue that the district court erred in refusing to grant their motion

---

[4] Wayne argues that the statements he made following the stop of the U-Haul should also be suppressed because they were the fruit of the poisonous tree. See United States v. Delancy, 502 F.3d 1297, 1308 (11th Cir. 2007). We discern no error in the district court's conclusion that the initial investigatory stops were lawful. Accordingly, the district court did not err in denying Wayne's motion to suppress his post-arrest statements as fruit of the poisonous tree.

11

for a new trial due to improper evidence and testimony.[5] We review the district court's disposition of a motion for a new trial for an abuse of discretion. United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). The broad standard for granting a new trial is whether the verdict must be set aside "in the interest of justice." United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994). We note that "multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995).

First, Wayne claims that evidence of his assets, expenditures, and structured deposits had no relation to the conduct for which he was indicted and only served to prejudice the jury. "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. However, "[t]he balance under Rule 403 should be struck in favor of admission." United States v. Finestone, 816 F.2d 583, 585 (11th Cir. 1987) (quotations and brackets omitted). "Appellate courts must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." Id. (quotations omitted).

Here, we discern no abuse of discretion. "[T]he presence of unexplained

---

[5] Deshawn adopts Wayne's arguments on appeal.

12

wealth can be relevant in drug cases . . . ." United States v. Terzado-Madruga, 897 F.2d 1099, 1120 (11th Cir. 1990). Evidence that a defendant lacked legitimate sources for his "opulent lifestyle" significantly increases the probative value of wealth evidence to show involvement in drug trafficking. Id.

Second, Defendants' claim that, despite a timely objection, the district court improperly allowed a line of questioning that led Agent Rice to vouch for the sufficiency of the government's case. "Vouching occurs when . . . the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness's credibility." United States v. Cano, 289 F.3d 1354, 1365 (11th Cir. 2002) (internal quotations omitted). To test for improper vouching, we consider whether "(1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." Id. (brackets omitted). After review of the record, we conclude that there was no reversible error. During cross examination, the defense opened the door to the disputed line of questioning. Cf. id. at 1366. Moreover, even if the prosecutor's questions led to or constituted vouching, it is clear that the disputed testimony did

not undermine the overall fairness of the trial.[6]

Accordingly, considering Defendants' arguments singularly and collectively, we conclude that the district court did not abuse its discretion by denying the motion for a new trial.

II. Sentencing

Deshawn argues that his sentence of 87 months is excessive and substantively unreasonable. He makes several arguments: (1) he received a two-level enhancement for possession of a firearm despite the fact that the jury acquitted him of that charge; (2) his role was allegedly minor compared to those of his codefendants; yet, his sentence was several times greater than the sentences of his allegedly more culpable codefendants; (3) the prior convictions that placed him in criminal history category II were two misdemeanor marijuana convictions, with a withholding of adjudication and fines on both; and (4) he pled guilty to, and accepted responsibility for, his conduct – possession with intent to distribute marijuana – and only went to trial to contest the quantity of marijuana and the gun charge he was ultimately acquitted of.[7]

_____

[6] Wayne also contends that the district court erred in failing to admit, under Fed. R. Evid. 801(d)(2)(A), a stipulation entered into by one of his co-defendants. Wayne presents no argument in support of this contention. Furthermore, we discern no error from our review of the record.

[7] Deshawn and Wayne both argue that the district court erred by applying sentencing enhancements based on facts that were neither admitted nor found by a jury beyond a

14

We review the final sentence imposed by the district court for reasonableness. United States v. Agbai, 497 F.3d 1226, 1229 (11th Cir. 2007). The Supreme Court has clarified that the reasonableness standard means review of sentences for abuse of discretion. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 597 (2007). The Supreme Court has suggested that such review entails determining whether the sentence is supported by the factors listed in 28 U.S.C. § 3553(a).[8] See id. at 600. "Review for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). There is a "range of reasonable sentences from which the district court may choose," and "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors in section 3553(a)." Id. Although we do not apply a presumption of reasonableness, we will ordinarily expect a sentence within the guideline's range to be reasonable. See id.

We conclude that Deshawn's sentence is reasonable. The district court

_____

reasonable doubt. The district court treated the sentencing guidelines as advisory. Therefore, this argument is meritless. See United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (per curiam).

[8] The 28 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

considered the arguments of the parties, stated that the guidelines were advisory, and acknowledged the § 3553(a) factors. With respect to the firearms enhancement, we note that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." United States v. Watts, 519 U.S. 148, 157, 117 S. Ct. 633, 638 (1997). With respect to sentencing disparity, the district court found, and Deshawn does not contest, that both co-defendants had a criminal history category of I, pled guilty to and accepted responsibility for their crimes, and were eligible for the safety valve.[9] Furthermore, although Deshawn accepted responsibility for the marijuana found in the Infiniti, he did not accept responsibility for additional marijuana found at the Residence.[10] Thus, it was not clear error to deny a reduction for acceptance of responsibility. See United States v. Garrasteguy, 559 F.3d 34, 39 (1st Cir. 2009) ("[Defendants] actions in requesting a trial regarding drug weight were not consistent with acceptance of responsibility for relevant conduct."). Finally, the district court acknowledged that Deshawn's prior

---

[9] The "safety valve" exempts defendants from minimum sentences if they meet certain criteria. See 18 U.S.C. § 3553(f).

[10] "We review a denial of a reduction of sentence for an acceptance of responsibility for clear error, and that finding is entitled to great deference on review and should not be disturbed unless it is without foundation." United States v. Knight, 562 F.3d 1314, 1322 (11th Cir. 2009) (internal quotations omitted).

16

convictions were misdemeanors involving possession of marijuana; however, the court concluded that the seriousness reflected by a criminal history category of II was appropriate because both offenses occurred within six months of the present offense. Accordingly, we discern no abuse of discretion in Deshawn's sentence, which is at the lowest end of the advisory range.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[11]

---

[11] Defendants' requests for oral argument are denied.