**CITY OF KIRKSVILLE, Respondent,**

v.

**Gregory D. GUFFEY, Appellant.**

**No. WD 39094.**

Missouri Court of Appeals,
Western District.

Sept. 15, 1987.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Oct. 27, 1987.

Application to Transfer Denied
Dec. 15, 1987.

Robert G. Duncan, Kansas City, William D. Farrar, Kirksville, for appellant.

Paul Rick Jackson, Kirksville, for respondent.

Before KENNEDY, C.J., and PRITCHARD and LOWENSTEIN, JJ.

KENNEDY, Chief Judge.

Defendant appeals from judge-tried convictions of driving while intoxicated, careless and imprudent driving, and failure to yield to emergency vehicle, all in violation of the city ordinances of Kirksville. He was assessed a fine of $250 for the intoxicated driving charge, and $50 for each of the other two. He appeals with two allegations of trial error.

The facts are as follows:

City Patrolman Roberts about midnight on January 23, 1986, fell in behind a red Camaro driving along the city streets of Kirksville. The Camaro in the space of a few blocks drove halfway across the center line of the street on three different occasions. Patrolman Roberts determined to stop the vehicle. He turned on his emergency lights and drew closer to the Camaro. The Camaro, which the officer recognized as belonging to the defendant, slowed down after a short distance as if to stop, then accelerated rapidly. The officer at this point turned on his siren along with his emergency lights. A race along the city streets ensued, which reached speeds in excess of 100 miles per hour.

The Camaro arrived at defendant's residence, and had been parked in the lighted garage when Roberts drove up. The defendant was going through a door which led from the garage to his residence. The garage door was descending as Roberts got out of his car and approached the garage. He was able to arrest the door's descent with his foot 10 or 12 inches from the ground.

From a deck attached to the house Roberts knocked on the door and demanded admittance. There was no response. Through a kitchen window he saw a blonde white woman in the kitchen. She was standing in front of and facing an opened refrigerator.

Two other city police officers now arrived. One of them crawled under the garage door and opened it. Further pounding on the door by the officers and calls to defendant still brought no response. They opened the unlocked door from the garage and went up the stairs into a bedroom. Defendant and the woman were in bed, under covers. Defendant seemed to be asleep. The officers pulled off the covers. The woman was fully clothed. The defendant had on the red T-shirt which he had been wearing when Roberts saw him enter the house from the garage and was in his sock feet. Beside the bed was a pair of blue jeans, wet in the crotch area. Defendant's shorts were also wet in that vicinity.

Defendant gave every evidence of being in an advanced state of intoxication. He mightily resisted the officers' attempt to arrest him, but at length they were able to wrestle him down the stairs and into their police car. They arrived at the police station at 12:15 a.m. on January 24.

1. *The legality of the arrest.*

■ Defendant filed a motion to suppress "evidence obtained by the Kirksville Police Department contemporaneous with and subsequent to the illegal entry into the residence of defendant." The overruling of this motion defendant says was error. He says the entry into his house to arrest him without a warrant violated his Fourth Amendment right to be free of unreasonable searches and seizures, made applicable to the states by the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). He cites cases which hold warrantless home arrests unreasonable and illegal which would be permissible if made in a public place. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Warrantless home arrests are not condemned, however, if they are justified by the exigencies of the situation. *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The City claims that this arrest falls within the latter category of cases.

We hold that the trial court was correct in denying defendant's motion to suppress evidence. The arrest was lawful and the evidence gained thereby was admissible. There were two features of the case which make the exigent circumstances justifying the arrest—hot pursuit and the need to preserve evidence.

Defendant expressly concedes that the officers had grounds for a warrantless arrest outside defendant's home, but he claims that they could not validly effect a warrantless arrest by a nonconsensual entry into his house.

The officers, however, pursued defendant into his house. It was a clear case of "hot pursuit". It is held that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson* [*U.S. v. Watson,*

423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)] by the expedient of escaping to a private place." *U.S. v. Santana,* 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976).

In addition to the element of "hot pursuit", there was present here the need to preserve evidence of defendant's blood alcohol level. There was probable cause to suspect from the course of defendant's driving that he was intoxicated, and it was on that charge that the officers made the arrest, along with the charge of failure to yield to an emergency vehicle. Defendant's blood alcohol might have dissipated while a warrant was being obtained, or he might have imbibed more alcohol, making any chemical test unreliable. This factor by itself was held in *Welsh v. Wisconsin,* *supra,* not to justify a warrantless home arrest—but the Supreme Court emphasized in that case that the State of Wisconsin had given the crime of drunken driving a minor status in classifying the first offense as "a noncriminal, civil forfeiture offense for which no imprisonment is possible." *Id.* 466 U.S. at 754, 104 S.Ct at 2100. Said the Court, "[T]he penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." *Id.,* n. 14. By contrast with the noncriminal civil forfeiture Wisconsin treatment of the offense, the City of Kirksville by ordinance has made a first offense of drunken driving, or of driving with a blood alcohol of more than .10 percent by weight, punishable by up to $500 fine and three months in jail.[1] *Welsh* would not invalidate the arrest in the present case.

A second distinction between *Welsh* and the present case is that *Welsh* did not feature a true "hot pursuit" situation, as the Supreme Court observed, 466 U.S. at 753, 104 S.Ct. at 2099, while the present case is a clear case of "hot pursuit".

An arrest in quite similar circumstances to the present was upheld in *State v. Niedermeyer,* 48 Or.App. 665, 617 P.2d 911 (Or. App.1980), as against a claim that it was an illegal search and seizure. The defendant's suspected offense there was attempting to elude a police officer, described by the court as "a class A misdemeanor and a major traffic offense." *Id.* at 913.

2. *The sufficiency of the evidence of identification of defendant.*

■ Defendant challenges the sufficiency of the evidence to support the conviction, arguing that the identity of defendant was not shown, that the driver could have been the lady instead of the defendant.

Officer Roberts, who was acquainted with defendant, testified that he could not identify defendant as he drove the red Camaro, but could identify "a white male" as the driver. He recognized the defendant as he was going into his house through the interior garage door. This was sufficient to identify the defendant as having been the driver. If there was evidence to indicate that the woman was the driver, that fact issue was for the trier of fact and we are not convinced that he made a mistake in resolving it against defendant.

The judgments of conviction on all charges are affirmed.

All concur.

---

1. Under the statutes of Missouri, under which defendant might have been charged, the penalty for first offense driving while intoxicated is a class B misdemeanor, Sec. 577.010, RSMo Supp. 1987. A class B misdemeanor is punishable by up to $500 fine, Sec. 560.016, RSMo 1979, and six months in jail, Sec. 558.011 RSMo Supp. 1987. The penalty for first offense driving with .10 of one percent or more by weight of alcohol in the bloodstream is a class C misdemeanor. Sec. 577.012, RSMo Supp.1987. A class C misdemeanor is punishable by up to $300 fine, Sec. 560.016 RSMo 1979, and 15 days in jail, Sec. 558.011, RSMo Supp.1987.