(325 P.3d 1192)

No. 108,550

STATE OF KANSAS, *Appellee*, v. GREGORY VINCENT KEENAN, *Appellant*.

Opinion filed May 30, 2014.

*Courtney T. Henderson*, of Billam & Henderson, LLC, of Olathe, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Betsey L. Lasister*, legal intern, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P. J., PIERRON, J., and BUKATY, S.J.

SCHROEDER, J.: Gregory Vincent Keenan appeals the denial of his motion to suppress the evidence obtained when officers entered his house without a search warrant. We conclude the officers had

probable cause plus exigent circumstances while investigating the possible violation of a protection from abuse order (PFA) and the crime of driving under the influence of alcohol (DUI) to enter Keenan's house after the investigation had been initiated on the driveway of the house. Finding no error, we affirm.

*December 23, 2010*

Around 11 p.m. on December 23, 2010, Keenan arrived at Julie Hynes' house in Parkville, Missouri, to pick up his son. Hynes, the child's grandmother, testified Keenan was "stumbling around, talking a little bizarre," swaying, and smelled of alcohol.

Keenan then picked up his sleeping child and took him outside into the sleeting weather. Hynes thought Keenan might be taking the child to the boy's mother's house two blocks away; however, Keenan told Hynes as he was leaving he was taking the child to his house in Lenexa, Kansas. Hynes was concerned and called the police to report a possible DUI.

Officer Betsy Madl of the Lenexa Police Department was dispatched to Keenan's house. Madl was informed a person might be operating a vehicle with a child inside while intoxicated. Madl was also told by dispatch a protection from abuse order (PFA) may have been violated. It was later determined at the police station the PFA had been dismissed.

Madl was at Keenan's house when Keenan pulled into his driveway. Madl testified, upon her contact with Keenan, she "immediately noticed a strong odor of a consumed alcoholic beverage emitting from his person or vehicle . . . and while carrying [his son] into the house, he stumbled several times." However, on cross-examination, Madl admitted she observed no traffic infractions or errors in driving in the very short time she observed Keenan driving down the street and into his driveway.

At the time Madl made contact, Keenan was talking on his cellphone. Keenan asked if he could go inside and lay his son down, and Madl consented but remained in constant contact with Keenan. As Keenan walked to the house, Madl observed him have a hard time walking in a straight line or staying steady while carrying his son. Just prior to Keenan entering his house, Officer Jason

Hinkle of the Lenexa Police Department arrived to assist Madl. The officers asked if they could enter the house. Keenan refused.

Despite Keenan's refusal, the officers immediately followed him into the house. Madl testified a concern regarding the safety of the child and the possibility the evidence of DUI could be lost, destroyed, concealed, or tampered with once Keenan went inside the house. Hinkle corroborated this concern, testifying Keenan could have simply started drinking again, thereby impairing the case they were investigating. Additionally, Hinkle testified that upon arriving at Keenan's house, he believed there was a violation of a PFA and, therefore, probable cause to arrest for the violation.

Keenan claimed he had nothing to drink. Madl testified Keenan had bloodshot eyes, slurred speech, and Keenan's statements were repetitive and not making much sense. Madl concluded, based on Keenan's difficulty in walking and communicating, he was highly intoxicated and would have been unable to safely operate a vehicle. Hinkle testified Keenan had stumbled several times, his eyes were bloodshot, his speech was slurred, and there was "an overwhelming odor of alcohol." On cross-examination, Hinkle admitted Keenan told him he had bad knees. However, Hinkle concluded Keenan was "significantly intoxicated and in no way capable of safely operating a motor vehicle."

Keenan refused to perform field sobriety tests, so Hinkle placed him under arrest. Hinkle offered Keenan the opportunity to make arrangements for his son. Keenan proceeded to plug in his cell phone and head toward the kitchen, where a 12-inch butcher's knife sat on the counter. Hinkle told Keenan to stay out of the kitchen, to which Keenan replied the officers were paranoid. Keenan continued to walk toward the knife, at which point Hinkle grabbed him by the collar to physically stop him. Hinkle testified Keenan then stated, " 'I'm fucking Jersey, baby. I've taken care of more cops than you'll know.' " Keenan was placed in handcuffs and transported to the police station, where he refused to submit to a breath test.

After Keenan's arrest, Hinkle searched Keenan's truck. Search of the truck revealed a half-empty bottle of whiskey, two full bottles of beer, and packaging from the alcohol. The whiskey bottle was

in the front passenger seat, along with a bottle cap. The other alcohol and packaging were in the front passenger floorboard. Hinkle testified the whiskey was within easy reach of the driver of the truck.

Keenan was charged with felony DUI, third offense, refusing a preliminary breath test, and transporting an open container in violation of K.S.A. 2010 Supp. 8-1567, K.S.A. 2010 Supp. 8-1012, and K.S.A. 2010 Supp. 8-1599, respectively.

*Motion to Suppress Hearing*

Keenan filed a motion to suppress the statements, observations, and all evidence that followed the officers' entry into his house. At the hearing on Keenan's motion, the State claimed probable cause with exigent circumstances existed to make a warrantless entry into the house to continue the DUI investigation. The State argued that allowing Keenan to go into the house without following him would have interfered with the time-sensitive nature of a DUI charge and would have allowed Keenan the opportunity to destroy or conceal the evidence by consuming more alcohol.

Keenan argued the police lacked both consent and probable cause. The allegation of being under the influence had been made from a caller in another county. The police did not observe traffic violations or have any other evidence of DUI until they got into the house and talked to Keenan. Therefore, Keenan argued a warrant was required to enter his house.

The State rebutted Keenan's argument by pointing out Madl had testified she had contact with Keenan outside the house and noticed he smelled of consumed alcohol and was stumbling. In corroboration with the phone tip, the State argued there was enough evidence to support a need to investigate for a DUI. Keenan argued these observations were unrelated to his driving and did not allow warrantless entry into his house against his will.

The district court held the police had reasonable suspicion to conduct a DUI investigation and, under exigent circumstances, had a duty to enter Keenan's house to do so. The district court noted, upon entering the house, the police obtained more facts which supported Keenan's arrest for DUI. The district court, therefore,

overruled Keenan's objection and approved the warrantless entry into his house. At trial, Keenan also objected to the introduction of the evidence obtained within the house, the audio of Hinkle's contact with Keenan, and the exhibits showing the alcohol from the truck. Keenan's attorney phrased his objection as wanting to "preserve [his] client's rights for the suppression issues . . . . My objection is stated in my motion to suppress, but I want to preserve that for today."

A jury found Keenan guilty of DUI and transporting an open container. Keenan timely appeals.

### ANALYSIS

Keenan raises a single issue on appeal: Did the district court err in denying his motion to suppress the officers' observations and Keenan's statements after the officers entered the house without a warrant?

*Did the District Court Err in Denying Keenan's Motion to Suppress?*

Keenan argues the State failed to prove the officers had probable cause plus exigent circumstances to permit the warrantless entry into his house and the district court therefore erred in admitting the evidence. As we consider Keenan's argument, we must determine:

- Whether the issue was preserved for appeal;
- The applicable standard of review;
- If the officers had probable cause a crime had been or was being committed to follow Keenan into his house without his permission or a warrant; and
- If the warrantless entry of Keenan in his house was justified by probable cause with exigent circumstances.

*Was the Issue Preserved for Appeal?*

The State contends Keenan failed to make a timely objection at trial to the officers' observations and their recitation of Keenan's statements after the officers entered the house. Keenan did make two objections to the admission of evidence at trial based upon suppression grounds; however, Keenan's objections were made af-

ter both officers had testified about their observations outside and inside the house at the time the exhibits were offered for admission. The district court overruled the objections and stated it would "maintain its previous rulings."

Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial under K.S.A. 60-404, which can be accomplished through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012); but see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (characterizing contemporaneous-objection rule as a "prudential rather than jurisdictional obstacle to appellate review"). Our courts have, on occasion, refused to strictly apply the contemporaneous-objection rule in some contexts upon finding the underlying purpose for the rule has been satisfied. See, *e.g.*, *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013); *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012); *State v. Breedlove*, 295 Kan. 481, 490-91, 286 P.3d 1123 (2012).

"When a pretrial motion to suppress is denied, the defendant must make a timely objection at trial to the introduction of the evidence, specifying the ground for the objection in order to preserve the issue for appeal." *State v. Alford*, 257 Kan. 830, 840, 896 P.2d 1059 (1995) (citing *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 [1993]). Here, Keenan did object to the admission of the officers' testimony, although in an untimely manner. We recognize Keenan was slow in objecting to the evidence addressed in the motion to suppress, but he did object, and we find his objection was sufficient to preserve the issue for appeal.

*Standard of Review*

A district court's decision on a motion to suppress is reviewed using a bifurcated standard. The appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. The ultimate legal conclusion is reviewed using a de novo standard. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013).

The State bears the burden of proof for a suppression motion. It must prove to the trial court the lawfulness of a warrantless entry. See *State v. Neighbors*, 299 Kan. 234, Syl. ¶ 3, 328 P.3d 1081 (2014); *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009).

*Did the Officers Have Probable Cause to Believe a Crime Had Been or Was Being Committed?*

Probable cause is defined as a quantum of evidence which leads a prudent person to believe an offense had been or was being committed. *State v. Dunn*, 233 Kan. 411, 414, 662, P.2d 1286 (1983). Probable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief the defendant committed a specific crime. "Probable cause is determined by evaluating the totality of the circumstances," and "does not require an officer have evidence of every element of the crime. [Citations omitted.]" *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 242 P.3d 1179 (2010).

Keenan argues the State failed to show the officers had probable cause for the search. Keenan also notes that at the motion to suppress hearing the State never suggested probable cause existed to enter the house without permission. Moreover, in its ruling, Keenan argues the district court specifically found reasonable suspicion existed to further the DUI investigation by entering the house, but it made no mention of probable cause and exigent circumstances. Because probable cause is a higher standard than reasonable suspicion, Keenan argues the State failed to meet the required standard to allow a warrantless search based upon probable cause with particularized exigent circumstances. See *State v. Dugan*, 47 Kan. App. 2d 582, 588-89, 276 P.3d 819 (2012) (citing *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 [2004]).

Here, the Lenexa police received a tip from a named informant that Keenan was possibly intoxicated and driving in bad weather with a child. The Kansas Supreme Court has held tips from known informants are more reliable than those from anonymous informants and these tips "may support a traffic stop." *State v. Slater*, 267

Kan. 694, 700, 986 P.2d 1038 (1999); see *City of Pratt v. Stover*, 272 Kan. 279, 281-83, 32 P.3d 1143 (2001).

Madl approached Keenan to investigate the violation of a PFA and a possible DUI based on a known informant's tip Keenan was possibly driving under the influence of alcohol. Madl smelled the strong odor of consumed alcohol coming from Keenan's person and observed him having difficulties while walking to the house. Keenan also appeared to be intent on avoiding Madl and getting into his house as quickly as possible. During the contact, Keenan asked to enter his house to put his son to bed. The officers had two choices, either keep him and his child outside or let Keenan enter his house and put his child to bed under their observation and control. At this point, the officers allowed Keenan to enter his house and requested permission for them to follow him into the house. Keenan then denied the officers' request to enter his house, but the officers immediately followed him into the house.

The totality of the circumstances and evidence available to the two officers prior to entering Keenan's house supports a finding of probable cause to arrest Keenan for violating a PFA and a possible DUI. The officers had information from dispatch and Hinkle's police car's onboard computer of a PFA violation. The officers also knew Keenan had been reported by a named informant to be possibly driving while intoxicated and he smelled of consumed alcohol, was stumbling as he walked to his house, and seemed intent on avoiding the officers. The only evidence weighing in Keenan's favor was the lack of any observed traffic infractions before the initial contact. Because Madl only saw Keenan pull into the driveway, this fact is of minimal value to Keenan. The officers had probable cause to arrest for a PFA violation and for a crime that had been committed in front of Madl since she observed Keenan operating his truck and the evidence of him being under the influence after he exited the truck and had contact with the officers.

Although the district court ruled there was sufficient reasonable suspicion to support the officers' warrantless entry into Keenan's house, the proper standard in this case is probable cause. See *State v. Fewell*, 286 Kan. 370, 382-84, 184 P.3d 903 (2008); *State v. Mendez*, 275 Kan. 412, 421, 66 P.3d 811 (2003). However, if a

district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *State v. May*, 293 Kan. 858, 870, 269 P.3d 1260 (2012).

*Probable Cause with Exigent Circumstances to Enter Keenan's House*

Now that we have determined there was probable cause to arrest Keenan, we will consider whether exigent circumstances existed to justify the warrantless entry into Keenan's house: the possible loss, destruction, concealment of evidence and the doctrine of hot pursuit. "In reviewing the propriety of a warrantless entry, the court must consider the means of entry, the criminal conduct at issue, and the claimed exigency to determine if the search or seizure avoids the constitutional prohibition of unreasonableness cast in the Fourth Amendment. [Citations omitted.]" *Dugan*, 47 Kan. App. 2d at 589.

" 'Exigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband. In each case, the particular facts must be considered.' " *Fewell*, 286 Kan. at 384 (quoting *State v. Houze*, 23 Kan. App. 2d 336, 337, 930 P.2d 620, *rev. denied* 261 Kan. 1088 [1997]). However, the Kansas Supreme Court has emphasized the exigent circumstances exception to the warrant requirement does not include situations " 'where only a mere possibility exists that evidence could be destroyed or concealed. [Citation omitted.]' " *Fewell*, 286 Kan. at 385 (quoting *State v. Boyd*, 275 Kan. 271, 274, 64 P.3d 419 [2003]). There is no "absolute test for the presence of exigent circumstances, because such a determination ultimately depends on the unique facts of each controversy." *United States v. Jones*, 635 F.2d 1357, 1361 (D. Minn. 1980). Exigent circumstances must be based on what a reasonable law enforcement officer would conclude from the information available at the time of entry. *Dugan*, 47 Kan. App. 2d at 606.

*Warrantless Entry*

A warrantless entry is per se unreasonable unless it falls within a recognized exception to the Fourth Amendment to the United

States Constitution and § 15 of the Kansas Constitution Bill of Rights. *Neighbors,* 299 Kan. 234, Syl. ¶ 1.

"[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court,* 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972). "Consequently, rather than employing a *per se* rule of unreasonableness, we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Illinois v. McArthur,* 531 U.S. 326, 331, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001). Any warrantless entry is per se unreasonable unless it falls within one of the exceptions to the warrant requirement recognized in Kansas. See *Neighbors,* 299 Kan. 234, Syl. ¶¶ 1, 3; *State v. Daniel,* 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011). One such exception is when probable cause with exigent circumstances justify an immediate warrantless entry. See *Dugan,* 47 Kan. App. 2d at 588-89 (citing *Groh,* 540 U.S. at 559, and six other United States Supreme Court cases).

One might argue the violation of a PFA and a possible DUI are minor offenses not justifying the warrantless entry into a defendant's house based on exigent circumstances. The United States Supreme Court in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984), addressed the issue of a warrantless entry into Welsh's house for a possible DUI. Welsh had run off the road, causing no damage to his car or himself. The driver behind him had observed Welsh driving erratically and pulled in behind Welsh's car to stop him from leaving. The police were called, but before they arrived, Welsh had walked away from the scene. The witness told police officers the driver was either inebriated or very sick. During their investigation, the police officers realized the registered owner's address was only a short distance away. The police officers went to Welsh's house to investigate a possible DUI and did not have a warrant to enter Welsh's house. Welsh's granddaughter answered the door and the police officers entered to find Welsh asleep in his bed. Welsh was arrested for DUI. The Court found the police officers' entry into Welsh's house was a violation of his Fourth Amendment right to be free from "unreasonable

searches and seizures." U.S. Const. amend. 4. The Court based its decision on Wisconsin's definition of driving while intoxicated as a "noncriminal violation subject to a civil forfeiture." 466 U.S. at 746. The underlying factor driving the Court in *Welsh* was the warrantless entry into a house to arrest for a minor nonjailable traffic offense. 466 U.S. at 742.

In Kansas, the violation of a PFA and the crime of DUI are not minor nonjailable offenses as defined by our laws. Both offenses subject the defendant to a potential jail sentence. See K.S.A. 2010 Supp. 8-1567; K.S.A. 2010 Supp. 21-3844; K.S.A. 60-3110. If we set aside the potential penalties for a PFA violation and look only at the crime of DUI, we find the punishment for a first offense ranges from a minimum of 2 days' to a maximum of 6 months' imprisonment; if the charge is for a third or fourth violation, it is a nongrid nonperson felony and could result in a maximum sentence of 1 year imprisonment in the county jail plus substantial fines and alcohol-related education classes. See K.S.A. 2010 Supp. 8-1567. Granted, at the time of entry into Keenan's house, the officers did not know whether they were investigating a misdemeanor or felony DUI, but either one is a jailable offense in Kansas. Keenan was ultimately charged and convicted of a nongrid nonperson felony, with this being his third DUI offense. Since this was a jailable offense, *Welsh* does not preclude a warrantless entry in a DUI case, and we must look to see if any exigent circumstances justified the warrantless entry into Keenan's house.

Here, there are two types of exigent circumstances to consider. The first is probable cause plus the prevention of loss, destruction, or concealment of evidence. *Fewell*, 286 Kan. at 384 (quoting *Houze*, 23 Kan. App. 2d at 337). The second is probable cause plus hot pursuit. *Mendez*, 275 Kan. at 421.

### Loss, Destruction, or Concealment of Evidence

Keenan claims there were no exigent circumstances to allow a warrantless entry and search in his house. While Keenan recognizes the possible loss or destruction of evidence is a factor for consideration by the court under an exigent circumstances analysis, Keenan contends the State's argument he could have consumed

more alcohol once inside the house was mere speculation. Keenan points out the officers made no mention of seeing alcohol in the house, and Keenan never stated there was alcohol in the house. According to Keenan, this speculation, coupled with the lack of a particularized finding of exigent circumstances by the district court, makes the State's exigent circumstances argument fail. See *Dugan*, 47 Kan. App. 2d at 588-89 (probable cause must be coupled with particularized, exigent circumstances to allow a warrantless entry of a private residence).

The State cites a list of factors a court can consider when determining whether exigent circumstances exist, including:

"(1) The time needed to secure a search warrant; (2) the reasonableness of the officers' belief the evidence may be immediately lost; (3) potential danger to the officers guarding the site while awaiting a warrant; (4) whether those persons with possession of the evidence are aware of the officers' presence; and (5) the ease with which the evidence might be destroyed or hidden." 47 Kan. App. 2d at 605 (citing *United States v. Moses*, 540 F.3d 263, 270 [4th Cir. 2008]; *United States v. Vega*, 221 F.3d 789, 800 [5th Cir. 2000]).

When considering the list of factors, we note four of the five factors support the officers' action in this case to preserve the evidence based on exigent circumstances:

- Late at night, the ability to obtain a judicially approved search warrant could exceed the evidentiary window of time to obtain a breath, blood, or urine test.
- The testimony of the officers clearly reflects their concerns with Keenan being in the house alone and the potential loss or destruction of the evidence.
- Keenan knew the officers were present.
- Finally, the evidence of DUI could easily be concealed, tampered with, or dissipated by Keenan's ability to consume more alcohol if left alone in the house. There was no way for the officers to know if more alcohol was available in the house, but the officers' concern was reasonable.

These four factors support exigent circumstances to justify the officers' decision to maintain constant contact and observation of Keenan by following him into the house.

The State draws our attention to a Missouri case with similar facts where a defendant fled from a police stop for driving across the centerline of a road. The defendant drove to his house, pulled into the garage, and attempted to close the garage door behind him. The officer who was pursuing the defendant stopped the garage door from closing, knocked on the inside door, entered, and arrested the defendant. The Missouri appellate court affirmed the district court, noting the need to preserve evidence of the defendant's blood-alcohol level, as it could have dissipated or been altered by the defendant imbibing more alcohol. *City of Kirksville v. Guffey,* 740 S.W.2d 227, 228-29 (Mo. App. 1987), *cert. denied* 485 U.S. 1035 (1988). In *Guffey,* the officer entered the house by stopping the garage door from closing after Guffey was already in his house. Here, the officers went into Keenan's house at the same time Keenan was entering to preserve the evidence of DUI and to address the child's welfare with a possible PFA violation.

There is an absence of caselaw in Kansas to answer the question of whether preservation of blood-alcohol evidence creates a sufficient exigency to permit police to follow the driver into his or her house without a warrant. See *Dugan,* 47 Kan. App. 2d at 606 (citing *State v. Legg,* 633 N.W.2d 763, 772 [Iowa 2001] [loss or compromise of blood-alcohol evidence in DUI supports finding of exigency]; contra *State v. Larson,* 266 Wis. 2d 236, 251, 668 N.W.2d 338 [Wis. App. 2003] [loss of blood-alcohol evidence in DUI not exigency]). Other jurisdictions appear to be split on the matter. See *People v. Thompson,* 38 Cal. 4th 811, 825, 43 Cal. Rptr. 3d 750, 135 P.3d 3 (2006) (dissipation of blood-alcohol content may constitute exigent circumstances under particular facts); contra *People v. Wehmas,* 246 P.3d 642, 644 (Colo. 2010) (the potential dissipation of the defendant's blood-alcohol content is not a sufficiently exigent circumstance to justify warrantless home entry). This split in authority does not indicate any particular trends in addressing the issue at hand. However, consistent in every case is a particularized case-by-case approach to determining whether exigent circumstances exist, as opposed to any bright-line rules. Thus, we must look to the totality of the circumstances facing the officers here as they approached, observed, and talked with Keenan as he

was trying to avoid them using the need to put his son to bed in his house.

We pause to discuss *Dugan* and Keenan's argument no particularized exigent circumstances existed to support a warrantless entry into his house. In *Dugan*, the officer was investigating a vehicle leaving the scene of a possible injury accident. The officer was notified by dispatch of the registered address for the vehicle. On the way to the house, the officer observed the vehicle meeting the description given pull into the garage of the house at the registered address. The officer exited her car and stopped the garage door from closing and entered the garage to start her investigation. With the vehicle in the garage, the officer was free to maintain a watch over the garage while a judicially approved search warrant was obtained. The panel found the evidence of a damaged vehicle would not be lost or destroyed within the reasonable amount of time to obtain a search warrant and, thus, did not create an exigent circumstance to justify a warrantless entry into the house. 47 Kan. App. 2d at 605-06.

While we recognize *Dugan*, we find it substantially different from the facts of this case. Madl and Hinkle were in direct contact with Keenan, working the investigation, as he was walking from his truck to his house. The officers did not follow Keenan into the house after he attempted to close the door, they went into the house at the same time he was entering to preserve the evidence of a crime they observed while outside the house. The officers knew they were investigating two possible crimes, one of which was DUI, and with the passage of time the evidence through breath, blood, or urine would be lost while a judicially approved search warrant is requested.

If Keenan entered the house alone, he could have locked the door behind him, further denying the officers access to the house. Experience dictates there was more than a possibility Keenan would conceal, dissipate, or destroy the evidence if he had gone into the house alone. See *Fewell*, 286 Kan. at 384-85. Thus, we are persuaded from the totality of the circumstances the loss, destruction, or concealment of evidence created exigent circumstances to justify the officers' warrantless entry into Keenan's house.

### Hot Pursuit

Keenan argues even though hot pursuit is a recognized exigent circumstance, it fails under these facts. Here, Keenan argues he was not fleeing from police, there was no warrant for his arrest, and there was no probable cause to enter his house. Keenan points out Madl even gave him permission to enter his house without taking him into custody, further demonstrating there was no hot pursuit. Thus, Keenan argues the hot pursuit doctrine does not apply and was not found to exist by the district court.

The State cites *United States v. Santana*, 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976), where the Supreme Court ruled police were justified in pursuing a suspect from the doorway of her house, a public place, to the inside of her house. The officers observed the defendant standing in her doorway with narcotics. The officers approached the house and identified themselves, and she retreated into the house. The officers followed through the open door and arrested her. The Court held the brevity of the chase did not render it less of a " 'hot pursuit,' " and the Court noted a suspect cannot defeat an arrest "which has been set in motion in a public place . . . by the expedient of escaping to a private place." 427 U.S. at 42-43. The State argues *Santana* applies in the case at hand, as Keenan could not simply retreat into his house to avoid arrest.

The Kansas Supreme Court has consistently recognized hot pursuit as an example of exigent circumstances and has favorably cited *Santana*. See *State v. Thomas*, 280 Kan. 526, 533-37, 124 P.3d 48 (2005); *Mendez*, 275 Kan. at 421. Here, officers had probable cause to arrest Keenan based on a possible PFA violation, a tip from a named informant of a possible DUI, the strong odor of consumed alcohol Madl detected on Keenan, and Keenan's stumbling and swaying as he walked from his truck to the house. Madl was at Keenan's house waiting on him to arrive to investigate a possible DUI and PFA violation. After Madl approached Keenan on the driveway, Hinkle arrived to assist. The investigation proceeded with Keenan and the officers walking toward the house. The officers' contact with Keenan reflects their control of the stop. Al-

though the officers had not arrested Keenan, by Keenan asking permission to enter his own house, Keenan submitted to the officers' authority and control of his movement and recognized he was restricted by their presence.

As stated earlier, the officers had two choices—keep Keenan out of his house or allow him to enter the house to put his child to bed. They chose to protect the child's welfare but kept Keenan under their control by following him into the house. Keenan was using his need to put his son to bed as a reason to keep moving toward the house and avoid the officers. The fact Keenan was trying to retreat into his house, particularly in light of his request to put his young son to bed, does not protect him from an arrest that was "set in motion in a public place." See *Santana*, 427 U.S. at 43.

Keenan first encountered Madl outside his house, and while the pursuit may not have been the equivalent of an action movie, the United States Supreme Court has still deemed the short trip from the doorway of a house to the interior to qualify as hot pursuit. 427 U.S. at 42-43. Therefore, the district court did not err in determining the officers had probable cause plus exigent circumstances to enter Keenan's house.

## CONCLUSION

There was sufficient competent evidence to support the district court's legal conclusion in denying Keenan's motion to suppress. The fact the officers had a valid tip Keenan was possibly driving under the influence of alcohol with a child in the vehicle, when coupled with the circumstances of the officers' initial contact with Keenan outside his house, were sufficient to establish probable cause to arrest Keenan for DUI. While carrying his child after requesting to put him to bed, Keenan continued walking into the house, which, under the facts of this case, created probable cause plus exigent circumstances for the officers to enter the house with Keenan to protect the evidence of DUI from being lost, destroyed, or concealed.

With this holding we are not establishing a bright-line rule to approve the warrantless entry into the house of a driver suspected of being under the influence of alcohol. When considering the

totality of the circumstances, we are only saying the facts of this case reflect the officers' warrantless entry into Keenan's house was justified and reasonable. Finding no error, we affirm.

Affirmed.