Tufte, Justice..
 

 [¶1] The City of Bismarck appeals from a district court order granting Deanne Brekhus's motion to suppress evidence. We conclude the police officer's warrantless limited entry into her open garage
 
 *717
 
 while in "hot pursuit" did not violate her rights under either the Fourth Amendment or N.D. Const. art. I, § 8. We reverse and remand for further proceedings.
 

 I
 

 [¶2] On December 16, 2016, at about 10:10 p.m., a Bismarck police officer observed a vehicle fail to negotiate a turn and slide into a snowbank on the side of the road. The officer then observed the vehicle back out of the snowbank and proceed to fishtail down the street. The officer testified he suspected the driver was driving at an unsafe speed for the road conditions.
 

 [¶3] The police officer turned around, followed the vehicle, and activated his overhead lights, but the driver did not stop. The district court found the officer had "activated his siren and continued to follow the vehicle for several blocks but the driver refused to comply with the obvious signals to stop and continued to flee the patrol car." The vehicle made several turns before entering a parking lot, and after about thirty seconds of pursuit, stopped in front of a garage door, waited for the door to open, and entered the garage. The garage was not attached to the defendant's residence, and the overhead garage door remained open. The officer commanded Brekhus to stay in the vehicle when she attempted to exit her vehicle.
 

 [¶4] At this point the police officer entered the garage on foot and made contact with the defendant, immediately noting the odor of burnt marijuana and alcohol. The officer observed that Brekhus was slurring her speech; had bloodshot, glossy eyes; and had difficulty keeping her eyes open while speaking with the officer. The officer had her come out of the garage and perform field sobriety tests. Brekhus was unable to follow directions for the horizontal gaze nystagmus test. The officer did not ask her to perform the one-leg stand or walk-and-turn tests because she had a walking cast on her leg.
 

 [¶5] After the police officer read Brekhus the implied consent advisory, she refused to submit to a preliminary breath test and was placed under arrest for driving under the influence. Brekhus gave the officer permission to retrieve her vehicle registration and proof of insurance from her vehicle in the garage. In his attempt to retrieve the documents, the officer observed in plain view a glass smoking device in the center console, warm to the touch and containing a substance he believed to be marijuana. The officer placed her under arrest for DUI refusal, marijuana, and paraphernalia offenses and transported her to the Bismarck police department. She was again read the implied consent advisory, and she again refused to provide a breath sample.
 

 [¶6] The City charged Brekhus with driving under the influence, possession of drug paraphernalia, and possession of marijuana. In February 2017 Brekhus moved the district court to suppress evidence, arguing that her rights under the Fourth Amendment and N.D. Const. art. I, § 8, were violated when the police entered her garage and that her vehicle was searched in violation of her constitutional rights. She also moved the court contending she was denied her statutory right to consult counsel before chemical testing. The City opposed both motions.
 

 [¶7] In April 2017 the district court held a hearing. The court subsequently entered an order granting Brekhus's motion on the basis of the police officer's initial entry into the open, detached garage. The court explained:
 

 As much as it seems an unjust result to reward a defendant who commits a traffic violation (especially a potentially
 
 *718
 
 drunk driver) and then
 
 knowingly refuses to stop after being given a clear and undeniable signal from a pursuing police officer (by the use of flashing overhead lights and a siren)
 
 and who ultimately escapes into an open garage to avoid arrest, the Constitution guarantees that the Defendant's garage be free from unreasonable search and seizure. Once she entered the garage, [the officer] did not have a right to enter the Defendant's detached and open garage to make contact with her regarding the misdemeanor offenses. [The officer] could have requested that she come to speak with him, or could have waited until the Defendant left her garage to walk towards her apartment and could have engaged her once she reached the public area of the apartment complex, but he could not enter her open detached garage without a warrant or without an exception to the need for a warrant.
 

 (Emphasis added.)
 

 [¶8] The district court therefore suppressed the evidence obtained after the officer entered her garage, concluding the officer violated Brekhus's constitutional rights when he entered the garage without a warrant or an exception to the warrant requirement.
 

 II
 

 [¶9] Our standard for reviewing a district court's decision on a motion to suppress evidence is well established:
 

 In reviewing a district court's decision on a motion to suppress evidence, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.
 

 State v. Hawkins
 
 ,
 
 2017 ND 172
 
 , ¶ 6,
 
 898 N.W.2d 446
 
 (quoting
 
 State v. Odom
 
 ,
 
 2006 ND 209
 
 , ¶ 8,
 
 722 N.W.2d 370
 
 ).
 

 III
 

 [¶10] The City argues the district court erred in granting Brekhus's motion to suppress evidence, because the police officer's warrantless entry into her garage was within the exigent circumstances exception to the warrant requirement.
 

 A
 

 [¶11] Individuals are protected from unreasonable searches and seizures in their homes under our federal and state constitutions. U.S. Const. amend. IV ; N.D. Const. art. I, § 8 ;
 
 State v. Friesz
 
 ,
 
 2017 ND 177
 
 , ¶ 15,
 
 898 N.W.2d 688
 
 . "Warrantless, non-consensual searches and seizures made inside a home are presumptively unreasonable, unless an exception to the warrant requirement applies."
 
 Friesz
 
 , at ¶ 15 ;
 
 see also
 

 Payton v. New York
 
 ,
 
 445 U.S. 573
 
 , 586,
 
 100 S.Ct. 1371
 
 ,
 
 63 L.Ed.2d 639
 
 (1980). In criminal proceedings, "[e]vidence seized from a warrantless search, when no recognized exception to the warrant requirement exists, must be suppressed under the exclusionary rule."
 
 State v. Hart
 
 ,
 
 2014 ND 4
 
 , ¶ 13,
 
 841 N.W.2d 735
 
 . "[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."
 

 Id.
 

 (quoting
 
 Mapp v. Ohio
 
 ,
 
 367 U.S. 643
 
 , 655,
 
 81 S.Ct. 1684
 
 ,
 
 6 L.Ed.2d 1081
 
 (1961) ). "A search occurs when the government intrudes upon an individual's reasonable
 
 *719
 
 expectation of privacy."
 
 State v. Winkler
 
 ,
 
 552 N.W.2d 347
 
 , 351 (N.D. 1996).
 

 [¶12] This Court has recognized that an individual may have a reasonable expectation of privacy in the individual's garage.
 
 See
 

 id.
 

 at 352
 
 . In
 
 Winkler
 
 , we held that under the circumstances the defendant "had a reasonable expectation of privacy as to what could not be seen from outside his unattached garage, and the officers' entry into the garage constituted a search, thus requiring a warrant."
 
 552 N.W.2d at
 
 352 ;
 
 see also
 

 State v. Kitchen
 
 ,
 
 1997 ND 241
 
 , ¶ 17,
 
 572 N.W.2d 106
 
 ("We have long recognized that a closed garage may be an intimate part of the residence where an owner had a reasonable expectation of privacy.");
 
 Lubenow v. N.D. State Hwy. Comm'r
 
 ,
 
 438 N.W.2d 528
 
 , 532 (N.D. 1989) (no reasonable expectation of privacy where an officer observed through a "fully open" garage door the contents and activities within an attached garage from a place he had a right to be, but concluding "a reasonable expectation of privacy [existed] regarding intrusion into the garage").
 

 [¶13] While warrantless searches and seizures in a home are presumptively unreasonable, "[t]he United States Supreme Court has held, however, that a person standing within the open doorway of a house is in a public place, and hence may be arrested without a warrant permitting police entry into the house."
 
 City of Fargo v. Steffan
 
 ,
 
 2002 ND 26
 
 , ¶ 12,
 
 639 N.W.2d 482
 
 (citing
 
 Illinois v. McArthur
 
 ,
 
 531 U.S. 326
 
 , 335,
 
 121 S.Ct. 946
 
 ,
 
 148 L.Ed.2d 838
 
 (2001) ;
 
 U.S. v. Santana
 
 ,
 
 427 U.S. 38
 
 , 42,
 
 96 S.Ct. 2406
 
 ,
 
 49 L.Ed.2d 300
 
 (1976) (citing
 
 Katz v. United States
 
 ,
 
 389 U.S. 347
 
 , 351,
 
 88 S.Ct. 507
 
 ,
 
 19 L.Ed.2d 576
 
 (1967), which explained: "What a person knowingly exposes to the public, even in [his/her] own house or office, is not a subject of Fourth Amendment protection.") ).
 

 [¶14] Generally, "[w]arrantless searches are unreasonable unless they fall within a recognized exception to the requirement for a search warrant."
 
 State v. Seglen
 
 ,
 
 2005 ND 124
 
 , ¶ 7,
 
 700 N.W.2d 702
 
 (quoting
 
 State v. Wanzek
 
 ,
 
 1999 ND 163
 
 , ¶ 7,
 
 598 N.W.2d 811
 
 ). The State must prove that a purported exception applies when alleging a warrantless search falls within an exception.
 
 Seglen
 
 , at ¶ 7 ;
 
 State v. Mitzel
 
 ,
 
 2004 ND 157
 
 , ¶ 12,
 
 685 N.W.2d 120
 
 . "Recognized exceptions include: consensual searches, stop and frisk searches,
 
 hot pursuit
 
 , border searches, and airport and courthouse searches."
 
 Seglen
 
 , at ¶ 7 (emphasis added);
 
 see, e.g.
 
 ,
 
 Birchfield v. North Dakota
 
 , --- U.S. ----,
 
 136 S.Ct. 2160
 
 , 2173,
 
 195 L.Ed.2d 560
 
 (2016) ("[The exigent circumstances exception] permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence.") (citing
 
 Kentucky v. King
 
 ,
 
 563 U.S. 452
 
 , 460,
 
 131 S.Ct. 1849
 
 ,
 
 179 L.Ed.2d 865
 
 (2011) ). Our legislature has defined "hot pursuit" under N.D.C.C. § 40-20-05(2) as "the immediate pursuit of an individual endeavoring to avoid arrest" for purposes of extending a police officer's authority to arrest beyond specified geographical limits.
 
 See
 

 State v. Wilkie
 
 ,
 
 2017 ND 142
 
 , ¶ 16,
 
 895 N.W.2d 742
 
 ;
 
 State v. Demars
 
 ,
 
 2007 ND 145
 
 , ¶ 11,
 
 738 N.W.2d 486
 
 .
 

 B
 

 [¶15] The City argues that the police officer's entry into Brekhus's garage and the search and seizure were proper under the "hot pursuit" doctrine.
 

 [¶16] "Police officers may enter a premises without a warrant when they are in hot pursuit of a fleeing suspect."
 

 *720
 

 U.S. v. Anderson
 
 ,
 
 688 F.3d 339
 
 , 344 (8th Cir. 2012) (quoting
 
 King
 
 ,
 
 563 U.S. at 460
 
 ,
 
 131 S.Ct. 1849
 
 );
 
 see also
 

 U.S. v. Santana
 
 ,
 
 427 U.S. 38
 
 , 42-43,
 
 96 S.Ct. 2406
 
 ,
 
 49 L.Ed.2d 300
 
 (1976). "Hot pursuit can, without more, justify a warrantless entry."
 
 Anderson
 
 , at 344 (quoting
 
 U.S. v. Schmidt
 
 ,
 
 403 F.3d 1009
 
 , 1015 (8th Cir. 2005) ). In
 
 Anderson
 
 , at 344, the Eighth Circuit Court of Appeals identified two factors to consider in deciding whether a "hot pursuit" creates an exigency: "(1) the gravity of the underlying offense, and (2) whether the government can demonstrate an 'immediate or continuous' pursuit of the suspect from the scene of the crime." The court concluded the warrantless entry into the premises in that case was lawful because the defendant committed the "serious offense" of drug trafficking and the police "immediately and continuously" pursued the defendant after they viewed the transaction.
 
 Id.
 
 at 345.
 

 [¶17] Relying on
 
 Santana
 
 ,
 
 427 U.S. at 42-43
 
 ,
 
 96 S.Ct. 2406
 
 , the City contends whether the warrantless search is proper depends on whether the arrest was set in motion in a public place. In
 
 Santana
 
 , at 40 n.1,
 
 96 S.Ct. 2406
 
 , when police officers arrived at the defendant's residence without a warrant, they found her "standing directly in the doorway-one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." When she retreated into her residence, the officers followed and apprehended her in possession of marked money and drugs.
 

 Id.
 

 at 40-41
 
 ,
 
 96 S.Ct. 2406
 
 . The Supreme Court concluded the defendant was in a "public place," since she was "not in an area where she had any expectation of privacy," and the Fourth Amendment was not implicated when the officers first sought to arrest her.
 

 Id.
 

 at 42-43
 
 ,
 
 96 S.Ct. 2406
 
 . The Court in
 
 Santana
 
 specifically considered whether the defendant could retreat into her house to thwart the arrest:
 

 The only remaining question is whether her act of retreating into her house could thwart an otherwise proper arrest. We hold that it could not. In
 
 Warden v. Hayden
 
 ,
 
 387 U.S. 294
 
 ,
 
 87 S.Ct. 1642
 
 ,
 
 18 L.Ed.2d 782
 
 (1967), we recognized the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons. This case, involving a true "hot pursuit," is clearly governed by
 
 Warden
 
 ; the need to act quickly here is even greater than in that case while the intrusion is much less. The District Court was correct in concluding that "hot pursuit" means some sort of a chase, but it need not be an extended hue and cry "in and about [the] public streets." The fact that the pursuit here ended almost as soon as it began did not render it any the less a "hot pursuit" sufficient to justify the warrantless entry into Santana's house.
 

 Santana
 
 , at 42-43,
 
 96 S.Ct. 2406
 
 (footnote omitted). The Court thus concluded that "a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place."
 

 Id.
 

 at 43
 
 ,
 
 96 S.Ct. 2406
 
 . The Supreme Court subsequently acknowledged that, although
 
 Santana
 
 had involved a felony suspect, "we did not expressly limit our holding based on that fact."
 
 Stanton v. Sims
 
 ,
 
 571 U.S. 3
 
 ,
 
 134 S.Ct. 3
 
 , 6,
 
 187 L.Ed.2d 341
 
 (2013) (per curiam) (holding in a § 1983 action that the law regarding warrantless entry in the hot pursuit of a fleeing misdemeanant is not clearly established).
 

 [¶18] In this case, the City asserts the police officer observed Brekhus driving erratically on a public road and initiated a traffic stop based on reasonable suspicion of a traffic violation. While the officer initially had only reasonable suspicion to stop
 
 *721
 
 Brekhus for a traffic violation, the City argues that once the officer initiated the stop using lights and sirens and Brekhus did not pull over, the officer developed probable cause to arrest her for fleeing or attempting to elude a peace officer under N.D.C.C. § 39-10-71, which is a class A misdemeanor for a first offense and a class C felony for subsequent offenses within three years. The City contends the record establishes Brekhus was aware of the officer's attempt to stop her before she entered into her garage. Moreover, under N.D.C.C. § 29-06-15(1)(a), a law enforcement officer may arrest a person without a warrant for a public offense committed or attempted in the officer's presence,
 
 i.e.
 
 , fleeing while in a public place.
 

 [¶19] Brekhus responds, however, that she was seized and searched in violation of the Fourth Amendment and the "even greater protection" under N.D. Const. art. I, § 8. Relying on
 
 Welsh v. Wisconsin
 
 ,
 
 466 U.S. 740
 
 ,
 
 104 S.Ct. 2091
 
 ,
 
 80 L.Ed.2d 732
 
 (1984), she asserts "hot pursuit" for a misdemeanor offense does not justify a warrantless entry into her garage, contending that when an offense is minor, a home arrest should usually be accompanied by a warrant. She argues the City has not shown that the totality of the circumstances justifies application of the hot-pursuit exception. Brekhus asserts she was observed committing only a noncriminal traffic offense and, rather than fleeing from the officer, she "merely" pulled into a safe location to stop when the officer turned on his lights, did not speed away from the officer's vehicle, and did not run when he approached.
 

 [¶20] In
 
 Welsh,
 

 466 U.S. at 742-44
 
 ,
 
 104 S.Ct. 2091
 
 , a witness observed the petitioner lose control of his car, go off the road, and come to a stop in a field. The witness saw the driver walk away and told a police officer who had arrived to investigate that the driver was either "very inebriated or very sick."
 

 Id.
 

 Officers went to the driver's house, which was a short distance away. They entered the home without a warrant and arrested the driver in his bedroom.
 

 Id.
 

 The Supreme Court ultimately held the warrantless, nighttime entry into the petitioner's home to arrest him for a nonjailable, civil traffic offense violated the Fourth Amendment.
 

 Id.
 

 at 753-54
 
 ,
 
 104 S.Ct. 2091
 
 .
 

 [¶21] The Supreme Court reasoned there had been "no immediate or continuous pursuit" from the scene of the crime.
 

 Id.
 

 at 753
 
 ,
 
 104 S.Ct. 2091
 
 . The Court also noted that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."
 

 Id.
 

 The Court held the warrantless entry and arrest violated the Fourth Amendment because in Wisconsin at that time, driving while intoxicated was a nonjailable traffic offense.
 

 Id.
 

 at 754
 
 ,
 
 104 S.Ct. 2091
 
 . The Court explained that the state's classification of the offense was "the best indication of the State's interest in precipitating an arrest."
 

 Id.
 

 The Court had also stated, however, that "[b]ecause we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home entry, we have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses."
 
 Welsh
 
 ,
 
 466 U.S. at
 
 749 n.11,
 
 104 S.Ct. 2091
 
 .
 

 [¶22] One treatise has further discussed the requisite seriousness of the offense under
 
 Welsh
 
 in the context of the hot pursuit exception:
 

 The hot pursuit exception has never explicitly been limited to felonies. In
 
 Welsh v. Wisconsin
 
 , the Supreme Court explained that "an 'extremely minor' offense cannot give rise to a constitutional exigency for a warrantless entry[,]" but
 
 *722
 
 the Court did not conclude that all misdemeanors are minor offenses, but rather only that nonjailable offenses are considered such.
 
 Welsh
 
 has been explained as standing for the proposition that police may not make a hot pursuit warrantless entry into a residence of a person who is suspected of committing only a minor offense. The prohibition in
 
 Welsh
 
 of warrantless entry for a minor offense, however, did not embrace all misdemeanors. In a case [
 
 Com. v. Jewett
 
 ,
 
 471 Mass. 624
 
 ,
 
 31 N.E.3d 1079
 
 , 1088-89 (2015) ] where the defendant was not suspected of committing a minor offense, but one which was punishable by imprisonment of up to two years, the court ruled that hot pursuit of an individual suspected of committing a jailable misdemeanor, such as in this case, is permissible. In doing so, the court noted that other states have similarly recognized that jailable misdemeanors are not minor offenses under
 
 Welsh
 
 . The court added that a categorical distinction would arbitrarily permit perpetrators of serious misdemeanors " 'to avoid punishment merely because of how the legislature had labelled an infraction.' " The court concluded that "limiting the hot pursuit exception to felonies and jailable misdemeanors appropriately balances the constitutional protections of both the Fourth Amendment and art. 14 with society's interest in apprehending individuals suspected of serious crimes."
 

 William E. Ringel,
 
 Searches and Seizures, Arrests and Confessions
 
 § 10:9 (2d ed. Mar. 2018) (footnotes omitted);
 
 see also
 
 5 Am. Jur. 2d
 
 Arrest
 
 § 98 ("It has been held that when police officers are in hot pursuit of a suspect who flees to a house to avoid arrest they may enter without a warrant, even in misdemeanor cases. However, there is authority to the contrary." (footnotes omitted) ). Courts have nonetheless held that jailable misdemeanors are not minor offenses under
 
 Welsh
 
 , and officers may make warrantless entry to arrest for crimes committed in their presence and while in hot pursuit of the suspect.
 
 See, e.g.
 
 ,
 
 Jewett
 
 ,
 
 31 N.E.3d at
 
 1088-89 ;
 
 State v. Keenan
 
 ,
 
 50 Kan.App.2d 358
 
 ,
 
 325 P.3d 1192
 
 , 1200-1202 (2014) ;
 
 People v. Wear
 
 ,
 
 229 Ill.2d 545
 
 ,
 
 323 Ill.Dec. 359
 
 ,
 
 893 N.E.2d 631
 
 , 645-46 (2008) ;
 
 State v. Paul
 
 ,
 
 548 N.W.2d 260
 
 , 264-268 (Minn. 1996).
 

 [¶23] In this case, the parties dispute what constitutes the underlying offense for considering the seriousness. The City contends the officer had probable cause Brekhus was fleeing or attempting to elude the officer, justifying the warrantless entry into the garage. On the other hand, Brekhus suggests she was merely finding a safe place to stop and asserts the minor offense was the noncriminal traffic violation the officer initially observed before pursuing her.
 

 [¶24] Under N.D.C.C. § 39-10-71(1), "[a]ny driver of a motor vehicle who willfully fails or refuses to bring the vehicle to a stop, or who otherwise flees or attempts to elude, in any manner, a pursuing police vehicle or peace officer, when given a visual or audible signal to bring the vehicle to a stop, is guilty of a class A misdemeanor for a first offense and a class C felony for a subsequent offense within three years." Section 39-10-71(2)(a), N.D.C.C., provides that "[a] signal complies with this section if the signal is perceptible to the driver and ... [i]f given from a vehicle, the signal is given by hand, voice, emergency light, or siren, and the stopping vehicle is appropriately marked showing it to be an official police vehicle."
 

 [¶25] The district court in this case specifically found that on this record "the driver [had] refused to comply with the obvious signals to stop and continued to flee the patrol car." Under
 
 *723
 
 N.D.C.C. § 29-06-15(1)(a), a law enforcement officer, without a warrant, may arrest a person for a public offense, committed or attempted in the officer's presence. Although Brekhus was ultimately not arrested and charged with fleeing or attempting to elude a police officer under N.D.C.C. § 39-10-71, what matters here is whether there was probable cause to believe that offense had been committed in the officer's presence. The record supports the district court's finding that Brekhus was "fleeing" from the officer at the time she drove into her garage. This was sufficient to establish probable cause for the officer to continue his pursuit on foot into the open garage.
 

 [¶26] In
 
 State v. Weber
 
 ,
 
 2016 WI 96
 
 , ¶ 45,
 
 372 Wis.2d 202
 
 ,
 
 887 N.W.2d 554
 
 , the Wisconsin Supreme Court concluded that an officer's warrantless entry into a defendant's garage and subsequent arrest of the defendant were constitutional "because they were justified by the exigent circumstance of hot pursuit of a fleeing suspect who had committed jailable offenses." The court addressed concerns about using the hot pursuit exception to uphold a warrantless entry when fleeing itself was the violation giving rise to the pursuit:
 

 Before we conclude, we acknowledge the concern that applying the hot pursuit doctrine to uphold a warrantless entry in a case where fleeing law enforcement was itself the violation giving rise to the pursuit will lead to the application of the hot pursuit doctrine in every case involving a fleeing suspect, no matter the gravity of the first offense committed, since flight itself can constitute a jailable offense. The objection is a legitimate one, but it fails to persuade for several reasons. First, the State will not always be able to establish probable cause that the suspect was
 
 knowingly
 
 fleeing. Second, as stated above, we decline to adopt the per se rule set forth by the State. The "touchstone of the Fourth Amendment is reasonableness," and "[r]easonableness ... is measured in objective terms by examining the totality of the circumstances." [
 
 Ohio v.
 
 ]
 
 Robinette
 
 , 519 U.S. [33, 39,
 
 117 S.Ct. 417
 
 ,
 
 136 L.Ed.2d 347
 
 (1996) ] (quoting [
 
 Florida v.
 
 ]
 
 Jimeno
 
 , 500 U.S. [248, 250,
 
 111 S.Ct. 1801
 
 ,
 
 114 L.Ed.2d 297
 
 (1991) ] ). Third, application of the hot pursuit doctrine in this scenario is not circular (i.e., the pursuit justifying the pursuit) because the legislature did not have to make knowingly fleeing a traffic stop a jailable offense, either at all or in all circumstances. That it has chosen to do so means that this court must treat it with the seriousness that it does other jailable offenses. And fourth, a contrary holding would lead to the opposite problem: in
 
 every
 
 case involving a nonjailable offense, suspects would have an incentive to flee law enforcement because flight itself would not justify application of the hot pursuit doctrine.
 

 Weber
 
 , at ¶ 43 (footnote omitted).
 

 [¶27] In this case, the police officer had probable cause that Brekhus was fleeing or attempting to elude him under N.D.C.C. § 39-10-71, which is not a minor, nonjailable offense. The officer's pursuit of her vehicle-first in the patrol car and then continuing on foot into the open garage-was immediate and continuous. Moreover, the officer's entry through the open garage door was limited to removing Brekhus from her vehicle and the garage to complete the traffic stop and determine why she had failed to stop. Under these specific circumstances, therefore, we conclude that the police officer's warrantless, limited entry into Brekhus's open garage while in hot pursuit was reasonable.
 

 [¶28] Additionally, although Brekhus also argues that N.D. Const. art. I, § 8, provides "even greater protection" than
 
 *724
 
 the Fourth Amendment in this case, we remain unpersuaded by her argument, which is essentially a policy argument not rooted in the text, history, or structure of the state constitution. Where, as here, the federal and state provisions are nearly identical, there is no textual hook on which to support a different substantive meaning. Without persuasive reasoning or authority, we do not assume that the people who adopted the North Dakota Constitution intended to provide greater protection than the Fourth Amendment by adopting language nearly identical to the Fourth Amendment.
 
 See
 

 State v. Carriere
 
 ,
 
 545 N.W.2d 773
 
 , 775-76 (N.D. 1996). We therefore conclude the district court erred in granting her motion to suppress evidence for a violation of her rights under either the Fourth Amendment or N.D. Const. art. I, § 8.
 

 IV
 

 [¶29] The order suppressing evidence is reversed, and the case is remanded for further proceedings.
 

 [¶30] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.