**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROBERT WISNIEWSKI,

      Defendant-Appellant.

---------------------------------

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EDDY GAMEZ,

      Defendant-Appellant.

Nos. 05-4241 and 05-4248
(D. Utah)
(D.C. No. 2:03-CR-390-DB)

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRISCOE** and **HARTZ**, Circuit Judges, and **KRIEGER**, District Judge.[**]

In this consolidated appeal, Eddy Gamez and Robert Wisniewski contend that the trial court erred in denying their motions to suppress evidence seized from a truck during a traffic stop. In specific, they argue that the trial court erred in finding that the observations of Sgt. Mangelson, who conducted the stop, constituted reasonable suspicion to detain the driver of the truck, Mr. Wisniewski, beyond the time necessary to verify his license and the vehicle's registration. Thus, they contend that evidence obtained during a search that grew out of the unlawful detention should be suppressed.[1] We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[**] The Honorable Marcia S. Krieger, United States District Judge for the District of Colorado, sitting by designation.

[1] Mr. Wisniewski and Mr. Gamez do not challenge the validity of the initial traffic stop, nor do they contend that Mr. Wisniewski's consent to search the truck was invalid. Indeed, they make no specific argument as to why the evidence seized from the truck should be suppressed in light of Mr. Wisniewski's consent to search the truck.

When there has been a Fourth Amendment violation, a consent to search which follows the violation can nevertheless be valid. *See United States v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994). In such circumstances, we consider whether there was a break in the causal connection between the constitutional violation and the evidence obtained. *See id.* Neither Mr. Wisniewski nor Mr. Gamez specifically contend that the consent to search was tainted by the alleged Fourth Amendment violation.

## I. Facts

Mr. Wisniewski filed a motion to suppress evidence obtained during a search of a truck he had been driving along I-15 near Nephi, Utah. He argued, *inter alia*, that the officer who conducted the stop lacked reasonable suspicion to detain him after his driver's license and the truck's registration had been cleared through dispatch. By separate motion, Mr. Gamez joined in Mr. Wisniewski's motion.

The Government opposed the motions. It argued that Mr. Wisniewski and Mr. Gamez both lacked standing to challenge the search of the truck, and that Mr. Wisniewski's detention was supported by reasonable suspicion.

Following four evidentiary hearings on the motion, the trial court found the following facts.[2] With one exception, specified below, these findings are unchallenged.

At 9:30 a.m. on May 22, 2003, Sergeant Paul Mangelson of the Utah Highway Patrol was monitoring traffic on I-15 south of Nephi, Utah, from a crossover in the median of the interstate. He observed a black pickup truck heading northbound on the interstate. His radar gun indicated that the truck was traveling at 63 m.p.h., well below the 75 m.p.h. speed limit, but he observed that

---

[2] Evidentiary hearings were held on August 7, 2003, August 12, 2003, October 23, 2003 and July 20, 2004.

the driver appeared to be "glued" to the steering wheel. Believing that the driver was impaired by fatigue or something else, he began to follow the truck.

Sgt. Mangelson then observed the truck cross the lane divider on the right-hand side of the interstate several times. He pulled up next to the truck, noticed that the driver seemed to be "in a trance" and was still "glued" to the steering wheel, and signaled for the truck to stop in order to investigate whether the driver was overly tired.

After the truck stopped, Sgt. Mangelson approached it from the passenger side and asked the sole occupant, Robert Wisniewski, for his driver's license and the vehicle's registration. Mr. Wisniewski produced an Indiana driver's license and a registration document from Indiana. Sgt. Mangelson observed that Mr. Wisniewski appeared nervous, his hand was trembling, he appeared to have trouble speaking because his mouth was "dry," and his stomach was "visibly churning."[3] Sgt. Mangelson described Mr. Wisniewski as appearing "scared to death."

According to its registration, the truck was not owned by Mr. Wisniewski but instead was owned by Eddy Gamez.[4] Sgt. Mangelson asked Mr. Wisniewski

---

[3] Both Mr. Wisniewski and Mr. Gamez contend that this factual finding was clearly erroneous because it is anatomically impossible for a stomach to "visibly churn." The Government does not address this contention.

[4] Mr. Gamez lived in California but he stored the truck at the home of a friend named "Socio" in Indiana. At one point, Mr. Gamez stated during a

(continued...)

who owned the truck; Mr. Wisniewski identified "Eddy" as the owner but stumbled over Eddy's last name, identifying it as something other than Gamez.

Sgt. Mangelson inquired as to why Mr. Wisniewski was driving the truck. Mr. Wisniewski responded that Eddy was a friend who had loaned him the truck. Sgt. Mangelson then asked Mr. Wisniewski where his trip had originated. Mr. Wisniewski responded that he had been in Las Vegas looking for construction work. Sgt. Mangelson had doubts about this answer because Mr. Wisniewski's hands did not appear to be those of a construction worker – they were smooth, rather than rough and calloused.

Sgt. Mangelson detected a "very strong" odor of air freshener and observed a cell phone, road atlas and radar detector in the truck. He saw very little luggage and no construction tools in the cab of the truck, but he could not determine whether such items were present in the covered truck bed. Sgt. Mangelson asked Mr. Wisniewski to exit the truck to perform sobriety tests. The results of these tests indicated that Mr. Wisniewski was fatigued but not intoxicated or physically impaired.

After conducting the sobriety tests, and based upon his experience and

---

[4](...continued)
recorded conversation with his attorney that he agreed to let Mr. Wisniewski borrow the truck to look for work. He later testified that the cocaine found in the truck was his and that Mr. Wisniewski was transporting it as a favor to him.

training as a highway patrol trooper and drug interdiction specialist, Sgt. Mangelson suspected that Mr. Wisniewski was transporting contraband.[5] Sgt. Mangelson escorted Mr. Wisniewski to his patrol car. He patted him down for weapons, then seated him in the patrol car while he verified the driver's license and whether the truck was reported stolen.[6] While sitting in the patrol car, Mr. Wisniewski volunteered that he had been arrested five times for driving under the influence. The dispatcher reported that his driver's license was valid and that there was no report of the truck being stolen.

At this point, Mr. Wisniewski asked whether he was free to go.[7] Sgt. Mangelson answered that Mr. Wisniewski was not free to leave because he

---

[5] At the time of his encounter with Mr. Wisniewski, Sgt. Mangelson had worked for the Utah Highway Patrol for approximately 37 years. He had specialized training in highway drug interdiction, was a member of a drug interdiction team, and trained other law enforcement officers in drug interdiction techniques. He testified that the use of third-party vehicles was common in drug smuggling and that drug traffickers many times are unable to provide the correct name of a vehicle's registered owner. He also testified that he would have expected Mr. Wisniewski to know the name of the registered owner of the truck because it was relatively new and in good condition. He further testified that air fresheners are used by drug traffickers to mask the scent of drugs.

[6] Mr. Wisniewski contends that this pat-down search was illegal. However, nothing was found during that search to suppress.

[7] The trial court made no findings with regard to the length of the detention up to this point or thereafter. The appellants do not contend that the length of the detention was unreasonable, only that it was not supported by reasonable suspicion after verification of Mr. Wisniewski's identity and the truck's registration.

believed that Mr. Wisniewski was transporting drugs. Sgt. Mangelson stated that he wanted to search the truck. Mr. Wisniewski denied transporting drugs but authorized Sgt. Mangelson to "go ahead" and search the truck. At no time in their conversation did Sgt. Mangelson raise his voice, threaten Mr. Wisniewski, move closer to him, point at him, or touch him.

Mr. Wisniewski exited the patrol car. Another officer, Trooper Kelsey, arrived, and assisted Sgt. Mangelson in searching the truck. They found 134 bricks of cocaine, each weighing 1 kilogram, contained in four duffle bags and a suitcase. They arrested Mr. Wisniewski.

Based upon these facts, the trial court denied the motions to suppress. It concluded that (1) Mr. Wisniewski had standing to challenge the search of the truck because he was in lawful possession and control of it at the time of the search; (2) Mr. Gamez, as the truck's owner and as owner of the cocaine, also had standing to challenge the search; (3) Sgt. Mangelson had reasonable suspicion to believe that Mr. Wisniewski was involved in criminal activity sufficient to justify his detention; (4) Mr. Wisniewski's consent to search the truck was valid; and (5) Sgt. Mangelson lacked probable cause to search the truck under the automobile exception to the warrant requirement.[8]

---

[8] The parties do not challenge the trial court's determination that Sgt.

(continued...)

With regard to reasonable suspicion, the trial court broke its analysis into three stages: (1) from the initial stop to the conclusion of the field sobriety tests; (2) from the conclusion of the field sobriety tests to the moment when the dispatcher informed Sgt. Mangelson that the driver's license was valid and the truck was not stolen; and (3) from the dispatcher's report to the moment when Mr. Wisniewski consented to the search of the truck. In this appeal, the challenge is limited to stage 3. With regard to stage 3, the trial court concluded that there was reasonable suspicion to detain Mr. Wisniewski because he appeared to be extremely nervous, the truck was registered to a third party whose name Mr. Wisniewski could not pronounce, there was a very strong odor of air freshener in the truck, Mr. Wisniewski's travel plans were implausible because his hands did not appear to be those of a construction worker, there were a cell phone, atlas and radar detector in the truck, and there was no luggage in the truck's main compartment. In its analysis, the trial court declined to consider that Mr. Wisniewski was traveling from a "source city" as a factor favoring reasonable suspicion.

Mr. Wisniewski was initially indicted on a single count of Possession of

---

[8](...continued)
Mangelson lacked probable cause to search the truck. Therefore, we do not address this issue.

Cocaine With Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same in violation of 18 U.S.C. § 2. Because the cocaine and its containers revealed the presence of Mr. Gamez' fingerprints, the Government obtained a two-count superceding indictment. It charged both Mr. Wisniewski and Mr. Gamez with: (1) Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 846; and (2) Possession of Cocaine With Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same in violation of 18 U.S.C. § 2. Following the denial of their suppression motions, both Mr. Wisniewski and Mr. Gamez entered conditional guilty pleas to Count 2. Mr. Wisniewski was sentenced to 108 months imprisonment and 5 years of supervised release. Mr. Gamez was sentenced to 156 months imprisonment and 5 years of supervised release.

## II. Discussion

On appeal, Mr. Wisniewski and Mr. Gamez contend that the trial court erred when it concluded that Sgt. Mangelson's observations constituted reasonable suspicion to detain Mr. Wisniewski after the dispatcher reported that his driver's license was valid and that the truck was not stolen. They allege two errors in particular: (1) that it was clear error for the trial court to find that Mr. Wisniewski's stomach was "visibly churning;" and (2) that the trial court erred in concluding that the information known to Sgt. Mangelson gave rise to reasonable

-9-

suspicion sufficient to extend Mr. Wisniewski's detention beyond verification of his license and the vehicle's registration.

As to the second contention, the appellants argue that many of the factors relied upon by the trial court were consistent with innocent travel and should not have been given any weight in the determination of reasonable suspicion. In specific, they assert that the trial court's consideration of Mr. Wisniewski's nervousness was improper because it was not out of the ordinary. They also argue that the truck's ownership by Mr. Gamez did not contribute to reasonable suspicion because Mr. Wisniewski demonstrated that he was entitled to operate the truck and simply mispronounced Mr. Gamez' name. They also contend that the single air freshener did not contribute to reasonable suspicion because it could be combined only with other innocent factors. They further note that Sgt. Mangelson did not take a close look at Mr. Wisniewski's hands to confirm the absence of callouses, not all construction work causes roughening of the hands, and the absence of callouses is consistent with being an unemployed construction worker. They point out that people who are traveling commonly possess road atlases, radar detectors, and cell phones, and argue that these items can only be given an innocent connotation. Finally, they assert that the absence of luggage in the cab of the truck was meaningless because there was a covered cab where luggage could be stored.

The Government does not respond to the assertion that the trial court's factual finding of a "visibly churning" stomach was clearly erroneous. It responds only that there was reasonable suspicion to detain Mr. Wisniewski.[9] In particular, it argues that the following factors contributed to reasonable suspicion – Mr. Wisniewski did not own the truck and could not pronounce the name on the registration, the strong odor of air freshener, Mr. Wisniewski's extreme nervousness, the fact that Mr. Wisniewski appeared to be sleepy, because individuals who transport drugs typically "drive straight through to their destination," Mr. Wisniewski's failure to acknowledge the troopers as he drove past them on the interstate, the absence of callouses on Mr. Wisniewski's hands, which suggested that he was not a construction worker, making his travel plans implausible, the fact that Mr. Wisniewski was driving from a "source city" along a drug pipeline, the absence of luggage in the passenger compartment, and the presence of a cell phone, atlas and radar detector in the truck.

In evaluating the trial court's ruling on the suppression motion, "we consider the totality of the circumstances and view the evidence in a light most

_____

[9] The Government also argues that Mr. Gamez lacks standing to challenge Mr. Wisniewski's detention. Mr. Gamez contends that the Government has not properly raised the issue of standing on appeal. Because standing to make a Fourth Amendment challenge is not jurisdictional, we decline to address it. *See United States v. DeLuca,* 269 F.3d 1128, 1135 (10th Cir. 2001).

favorable to the government." *United States v. Long*, 176 F.3d 1304, 1307 (10th

Cir. 1999). To the extent that the trial court's factual findings are challenged, we

review them for clear error. *See United States v. Sims*, 428 F.3d 945, 951 (10th

Cir. 2005). We review the trial court's legal conclusions *de novo*. *See id.*

The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> Warrants shall issue, but upon probable cause, supported
> by Oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be
> seized.

This Amendment protects individuals from being subjected to unreasonable

searches and seizures. *See Pennsylvania v. Mimms,* 434 U.S. 106, 108-09 (1977).

The reasonableness of the search or seizure depends upon a balance between the

public interest and the individual's right to be free from arbitrary interference

from law enforcement officers. *See id.* at 109.

As we have stated in numerous opinions, a traffic stop is a seizure for

purposes of the Fourth Amendment. *See, e.g., United States v. Williams*, 271 F.3d

1262, 1266 (10th Cir. 2001); *United States v. Hunnicutt*, 135 F.3d 1345, 1348

(10th Cir. 1998). However, it is more akin to an investigative detention than to a

custodial arrest. *See Williams,* 271 F.3d at 1266. Thus, the principles enunciated

in *Terry v. Ohio*, 392 U.S. 1 (1968) are applicable.

We have addressed the permissible parameters of a continued detention in the scope of a traffic stop in several prior rulings. If the reasonableness of the initial detention is not challenged, then the issue is whether the continued detention was reasonably related in scope to the circumstances which first justified the detention. *See Williams*, 271 F.3d at 1266 (citing *Terry*). To assess its reasonableness, we look at the length of the detention and the manner in which it was carried out. *See id.* at 1267 (quoting from *United States v. Holt*, 264 F.3d 1215, 1230 (10th Cir. 2001)). During a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation for the traffic violation. *See Williams,* 271 F.3d at 1267-68. Ordinarily, once a driver has complied and been cleared or given a citation, he must be allowed to proceed on his way without further delay by the law enforcement officer for additional questioning. *See United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988), *overruled in part on other grounds, United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995). To extend the traffic stop after completion of the verification process, the law enforcement officer must have either the consent of the detainee or an objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring. *See Williams*, 271 F.3d at 1268; *Hunnicutt*, 135 F.3d at 1349.

As the Supreme Court explained in *United States v. Arvizu*, 534 U.S. 266,

274 (2002), reasonable suspicion is an abstract concept which cannot be reduced to a "neat set of legal rules." (Internal quotations and citations omitted). It exists when there is a "particularized and objective basis for suspecting criminal activity." *United States v. Tucker*, 305 F.3d 1193, 1200 (10th Cir. 2002). In determining whether an officer possessed reasonable suspicion, we review the totality of the circumstances and consider both the quantity of information possessed by the law enforcement officer and its reliability. *Id.; see also Arvizu*, 534 U.S. at 274. In such analysis, we do not evaluate the facts in isolation and instead construe them together to discern whether an officer could objectively and reasonably suspect that criminal activity was afoot. *See Arvizu*, 534 U.S. at 274 .

An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. *See United States v. Hall,* 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). However, reasonable suspicion may be premised upon information which is less reliable than that required to establish probable cause. *See Tucker*, 305 F.3d at 1201. Factors which are not proof of any illegal conduct and which are consistent with innocent travel may also contribute to a reasonable suspicion. *United States v. Valles,* 292 F.3d 678, 680 (10th Cir. 2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 9 (1989)). Such factors may include the absence of luggage, ownership of the vehicle by a third party, an odor of air freshener, and implausible travel plans. *See*

*United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997); *Hunnicutt*, 135 F.3d at 1349; *United States v. Santos*, 403 F.3d 1120, 1129 (10th Cir. 2005); *United States v. Salzano*, 158 F.3d 1107, 1114 (10th Cir. 1998). However, such facts may be given little or no weight if they are susceptible to varying interpretations, *i.e.*, the absence of luggage in the backseat of a car has little significance when the car has a trunk. *See Mendez*, 118 F.3d at 1431.

The trial court considered many observations by the officer in determining that there was reasonable suspicion to detain Mr. Wisniewski after the dispatcher cleared his driver's license and the truck's registration. Although we might have accorded individual observations different significance than did the trial court, when taken together, they were sufficient to amount to reasonable articulable suspicion.

### III. Conclusion

The trial court's denial of the motions to suppress is **AFFIRMED**.

Entered for the Court


Marcia S. Krieger
District Judge

-15-