NOT DESIGNATED FOR PUBLICATION

No. 120,325

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS, ex rel. GEARY COUNTY SHERIFF'S DEPARTMENT,
*Appellee*,

v.

$81,957.00 IN U.S. CURRENCY, Defendant,
and ALEXIS MILLA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed December 13, 2019. Affirmed.

*John W. Thurston* and *Brandon J. Katt*, of Addair Thurston, Chtd., of Manhattan, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM:  The Geary County Sheriff's Department confiscated $81,957 in United States currency from Alexis Milla after it was discovered in a search of a rental car driven by Milla. Claiming it was drug proceeds, the State initiated a civil proceeding of forfeiture regarding the currency. After a bench trial, the district court granted judgment to the State.

On appeal, Milla contends his Fourth Amendment rights which protect him from an unlawful search and seizure were violated and, as a result, the currency should be

1

suppressed as evidence and returned to him. Additionally, Milla argues there was no substantial competent evidence to support the district court's ruling that the seized currency was proceeds from an illicit drug transaction.

Upon our review, we find no reversible error and, therefore, affirm the district court's forfeiture of the $81,957 in United States currency.

FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2015, Sergeant Christopher Ricard, a deputy from the Geary County Sheriff's Department, stopped a rental car driven by Milla for a traffic violation. During the traffic stop, Sergeant Ricard became suspicious of illicit drug activity and he extended the stop beyond processing the traffic violation by deploying a trained K-9 around Milla's vehicle to detect the presence of illegal drugs. The K-9 alerted to the presence of illegal drugs inside the vehicle. Sergeant Ricard searched the vehicle and, although he did not find any illegal drugs, he recovered 16 bundles of currency in the amount of $81,957, individually wrapped in dryer sheets and duct tape. Based on Sergeant Ricard's training and experience, he believed the packaging of the currency indicated that it derived from the sale of illegal drugs. Sergeant Ricard seized the currency and arrested Milla for transportation of drug proceeds.

In January 2016, the State filed a notice of pending forfeiture pursuant to the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101, et seq. The notice stated the conduct giving rise to the forfeiture was a violation of law and the seized property was drug proceeds. Milla filed a claim in response, alleging that he was the owner of $79,000 worth of the total amount of seized currency. Milla's passenger, Abel Hernandez Borges, claimed the remaining $2,837 belonged to him. In Milla's claim, he asserted that he acquired the currency in many ways over the years—including

employment income, settlement of two lawsuits, and the sale of his home in Florida. Milla denied the currency had any connection to drug proceeds or other illegal activity.

Prior to the forfeiture hearing, Milla filed a brief on Fourth Amendment search and seizure issues. In the brief, Milla alleged Sergeant Ricard exceeded the scope of the traffic stop when he performed an unnecessary criminal history check prior to deploying the K-9 around his rental vehicle. Milla argued that Sergeant Ricard did not have reasonable suspicion to support prolonging the stop for the criminal history check and, therefore, all evidence obtained as a result of the K-9 search was illegal and should not be considered when rendering a judgment in the civil forfeiture case.

For its part, the State raised procedural arguments that Milla had failed to file a motion to suppress evidence and failed to contemporaneously object to the admission of the evidence at trial. As to the merits, the State asserted that under the totality of the circumstances, Sergeant Ricard had reasonable suspicion to extend the traffic stop for a drug investigation upon learning of suspicious circumstances while conducting the stop.

After a bench trial on the State's forfeiture action, the district court issued a 12-page memorandum decision, noteworthy for its detailed findings of fact and conclusions of law. As discussed later in this opinion, the district court found that Sergeant Ricard observed a moving traffic violation which resulted in the officer lawfully stopping Milla's vehicle. As Sergeant Ricard walked up to contact Milla and his passenger, the officer noticed a large box of trash bags, a box of dryer sheets, and two, two-way radios. While Milla was retrieving his driver's license and vehicle registration, he advised Sergeant Ricard that the pair had been in Kentucky for two days visiting a friend's sick mother and they were returning to Colorado. But the rental agreement documents indicated that the vehicle had only been rented in Colorado the previous day.

3

According to the district court's findings, Sergeant Ricard had Milla accompany him to his patrol car and he began processing the driver and vehicle documents. Based on his training and experience in drug detection, Sergeant Ricard concluded that the two-way radios, box of dryer sheets, illogical travel plans in a rental car, lack of luggage, and box of trash bags—considered collectively—resulted in reasonable suspicion that Milla was engaged in illegal drug activities. The district court concluded: "These suspicions were made by the Officer within a few minutes of making the traffic stop and before or during the call to dispatch for a [driver's license] check. At this point [Sergeant] Ricard already had a reasonable suspicion of another crime taking place."

When Sergeant Ricard advised Milla that he was going to run his K-9 around the rental vehicle, Milla replied, "Sure, go ahead." According to the district court, after the K-9 alerted to the odor of drugs: "Sergeant Ricard had probable cause to detain the claimant and to search the vehicle for drugs or drug proceeds." A search of the vehicle uncovered 16 bundles of U.S. currency, totaling $79,120, wrapped in dryer sheets that were duct taped and rubber-banded together. The vehicle also contained receipts for the dryer sheets, duct tape, and box of trash bags that had been purchased earlier that day in Kentucky. Upon his arrest, Milla invoked his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and declined to talk to the officer.

Based on the evidence, the district court made the legal conclusion that Sergeant Ricard had reasonable suspicion to investigate drug related criminal activity prior to requesting a criminal history check from the dispatcher, stating:

> "Here, the court finds that the Officer had reasonable suspicion to investigate a drug related crime even before he called into dispatch. Everything the Officer saw when approaching the SUV made him, as a very experienced officer in the area of interdiction, suspicious of criminal activity unrelated to the traffic stop. See *State v. Schooler*, [308 Kan. 333, 419 P.3d 1164 (2018)]."

4

The district court then ruled on the merits of the civil forfeiture claim, concluding that the State had proven by a preponderance of evidence that the seized currency was drug proceeds. As discussed more fully below in the analysis section, the district court supported its legal conclusion by highlighting evidence of the large amount of currency; the manner in which it was packaged; the alert of the K-9 to the smell of illegal drugs; Milla's implausible travel plans; photographs and videos found on Milla's cell phone; Milla's inconsistent and vague testimony; and his bank records. Finally, the district court ruled that Milla had failed to prove that an exemption existed and that the property was not subject to forfeiture.

Milla filed a timely notice of appeal.

## WAS THERE REASONABLE SUSPICION OF CRIMINAL ACTIVITY TO EXTEND THE TRAFFIC STOP?

Milla contends the evidence from the traffic stop, including the $81,957, must be suppressed because the warrantless search of the rental vehicle and seizure of the evidence violated the Fourth Amendment to the United States Constitution.

In response, the State initially argues that our court is procedurally barred from considering this issue because Milla failed to file a motion to suppress the search and seizure—he only filed a brief on the search and seizure issue. In addition, the State asserts that Milla failed to make a contemporaneous objection to the admission of the evidence at trial as required under K.S.A. 60-404. For both reasons, the State contends that Milla failed to preserve for appeal any issue about the admissibility of the State's evidence. As to the merits, the State contends there was reasonable suspicion for the traffic stop to be extended in order to investigate potential drug crimes.

5

*Procedural Analysis*

Resolution of this procedural issue turns on our court's interpretation of K.S.A. 60-404. "Our standard of review is unlimited in a case involving the interpretation of a statute." *State v. Ruiz-Reyes*, 285 Kan. 650, 653, 175 P.3d 849 (2008).

K.S.A. 60-404 provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

"Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial under K.S.A. 60-404, which can be accomplished through a standing objection." *State v. Keenan*, 50 Kan. App. 2d 358, 363, 325 P.3d 1192 (2014). As a general rule, "'[a] matter to which no objection was raised in the trial court is not to be considered on appeal.'" *State v. 1978 Chevrolet Automobile*, 17 Kan. App. 2d 144, 156, 835 P.2d 1376 (1992) (quoting *State v. Troy*, 215 Kan. 369, 373, 524 P.2d 1121 [1974]). Moreover, "[t]his rule holds true even if the trial court already denied a motion to suppress evidence prior to trial." *State v. Riojas*, 288 Kan. 379, 385, 204 P.3d 578 (2009).

The circumstances relating to this procedural issue are unique. Perhaps because this is a civil proceeding, Milla did not file a motion to suppress evidence prior to or during trial which is typically done in a criminal proceeding. Rather, Milla filed a trial brief explaining his view that the search and seizure of the items found in the rental car violated the Fourth Amendment. At the start of the bench trial, the State vigorously objected to the procedural deficiency and merits of Milla's brief. The district court overruled the objection, concluding that the State had sufficient time to consider the

6

Fourth Amendment arguments in the brief and that the prosecutor was very well-versed in search and seizure law. As a result, the district court ruled the State was not prejudiced by the court considering the issue.

During the bench trial, the Fourth Amendment issue was thoroughly argued by both parties, the district court considered the merits, and it issued a written decision. Under these circumstances, we are persuaded that Milla's trial brief was appropriately treated as a motion to suppress evidence, and that the purposes of K.S.A. 60-404 were met.

With regard to the State's second procedural complaint, during the presentation of evidence at the bench trial, Milla did not contemporaneously object to admissibility based on the Fourth Amendment. In this regard, Kansas appellate courts have stated: "'When a pretrial motion to suppress is denied, the defendant must make a timely objection at trial to the introduction of the evidence, specifying the ground for the objection in order to preserve the issue for appeal.'" *Keenan*, 50 Kan. App. 2d at 363 (quoting *State v. Alford*, 257 Kan. 830, 840, 896 P.2d 1059 [1995]).

Past courts have held the preservation requirement is more of a prudential bar than a jurisdictional one. *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013). Moreover, we have not stringently applied the contemporaneous objection rule in limited appropriate cases. Especially pertinent to this appeal, in *State v. Bogguess*, 293 Kan. 743, 747, 268 P.3d 481 (2012), our Supreme Court held that a contemporaneous objection was not necessary because the same judge presided over a motion in limine and bench trial, and both parties were aware the defendant was objecting to the admission of evidence.

*Bogguess* provides helpful precedent in addressing this procedural bar raised by the State. Milla's Fourth Amendment objection to admission of the evidence came at the beginning of the bench trial. The same district judge read Milla's brief, listened to the

legal arguments, heard the bench trial evidence, and ruled on the search and seizure issue. Following *Bogguess*, we are persuaded that the contemporaneous objection requirement of K.S.A. 60-404 was satisfied under these unique circumstances. As a result, we will consider the merits.

*Merits Analysis*

On appeal, Milla argues that Sergeant Ricard impermissibly extended the traffic stop when he requested a criminal history check from the dispatcher in violation of his Fourth Amendment rights. Conversely, the State argues that Sergeant Ricard had reasonable suspicion sufficient to extend the stop because of Milla's inconsistent travel plans and because the miscellaneous items found in the vehicle were consistent with the transportation of illicit drugs.

Our standard of review provides that when an appellate court reviews a district court's ruling on a motion to suppress evidence, this review has two components. The appellate court reviews the district court's factual findings supporting its decision to determine if those facts are supported by substantial competent evidence. The appellate court reviews the ultimate legal conclusion using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

Of particular relevance to this appeal, and as confirmed by Milla's counsel during oral argument, Milla does not contest the material facts regarding the search and seizure as found by the district court. This is important because when the parties do not dispute the material facts relating to the search and seizure as found by the district court, the suppression issue is only a question of law over which the appellate court exercises unlimited review. 307 Kan. at 827.

Preliminarily, it is important to note that Milla has raised a cognizable constitutional claim because the United States Supreme Court and our court have recently held that the Fourth Amendment's exclusionary rule applies to civil forfeiture proceedings:

> "In *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965), the United States Supreme Court held that 'the constitutional exclusionary rule does apply to such forfeiture proceedings.' Although forfeiture actions are civil in nature, the protections against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights are applicable. While the Kansas Supreme Court has not expressly adopted the *Plymouth Sedan* holding, it has implicitly recognized the exclusionary rule applies in the civil forfeiture context. [Citations omitted.]" *State v. One 2008 Toyota Tundra*, 55 Kan. App. 2d 356, 362-63, 415 P.3d 449 (2018).

Given this precedent, we will apply Fourth Amendment principles to evaluate the constitutionality of the search and seizure leading to the confiscation of the currency.

On appeal, as he did in the district court, Milla focuses his claim of error on one aspect of the traffic stop: "[Sergeant] Ricard did not have the requisite reasonable suspicion when he extended his traffic stop for unrelated criminal history information in order to utilize his drug canine."

At the outset, Milla's claim misconstrues the district court's factual findings and legal conclusions. As noted earlier, the district court specifically found that *during the ordinary traffic investigation portion* of the traffic stop, Sergeant Ricard obtained sufficient evidence to warrant an investigation into possible drug crimes. In particular, the district court noted that it had viewed an in-car video and "it clearly showed [Sergeant] Ricard multitasking in reviewing the rental vehicle's information and running various warrant checks." This resulted in the district court concluding that Sergeant Ricard's

9

suspicions of drug activity "were made by the Officer within a few minutes of making the traffic stop and *before or during the call to dispatch for a* [*driver's license*] *check.* At this point [Sergeant] Ricard already had a reasonable suspicion of another crime taking place." (Emphasis added.)

Kansas law interpreting the Fourth Amendment provides: "Traffic stops cannot be measurably extended beyond the time necessary to process the infraction that prompted the stop unless there is a reasonable suspicion of or probable cause to believe there is other criminal activity, or consent." *State v. Jimenez*, 308 Kan. 315, Syl. ¶ 2, 420 P.3d 464 (2018).

In particular:

"Beyond simply determining whether to issue a citation, a law enforcement officer's mission in a traffic stop typically includes ordinary inquiries for: (i) checking the driver's license; (ii) determining whether there are outstanding warrants against the driver; and (iii) inspecting the automobile's registration and proof of insurance. The officer may also take negligibly burdensome precautions for officer safety. Information gathering must be limited to the infraction prompting the stop or those matters directly related to traffic code enforcement, i.e., ensuring vehicles on the road are operated safely and responsibly." 308 Kan. 315, Syl. ¶ 3.

As the district court determined in this case, Sergeant Ricard developed a reasonable belief that Milla was involved in illegal drug activity prior to or during obtaining his driver's license information which is part of the ordinary traffic investigation phase of a traffic stop. Milla does not dispute the factual findings. Milla's complaint is that Sergeant Ricard did not have the requisite reasonable suspicion at the time he requested a criminal history check during the traffic stop. But the evidence showed that Sergeant Ricard *simultaneously* requested driver's license information and criminal history information from the dispatcher. Because the district court concluded

10

that reasonable suspicion had developed *before* the request for driver's license and criminal history information, the traffic stop was not impermissibly extended.

Moreover, Milla does not state how long it took for Sergeant Ricard to receive the criminal history information after he requested it from the dispatcher. Although Sergeant Ricard testified that a dispatcher's response to such a request would ordinarily be made "within seconds, or it could be several minutes," Milla does not indicate how long it took in this case to retrieve the information. As stated earlier, traffic stops may not be "measurably extended" beyond what is necessary to process the traffic infraction. 308 Kan. 315, Syl. ¶ 2. Here, there is no showing by Milla that there was a measurable extension of the traffic stop to obtain criminal history information. Kansas law provides: "The burden is on the party making a claim of error to designate facts in the record to support that claim; without such a record, the claim of error fails." *State v. Miller*, 308 Kan. 1119, 1157, 427 P.3d 907 (2018).

Milla also challenges the basis for Sergeant Ricard's reasonable belief that the vehicle contained evidence of illegal drug activity. Milla focuses his argument on the fact that all of the items in the rental vehicle had legitimate purposes and his travel plans were not suspicious. Next, we will consider whether the district court erred when it concluded that the facts made known to Sergeant Ricard during the ordinary traffic investigation were sufficient as a matter of law to constitute reasonable suspicion to extend the traffic stop to permit deployment of the drug dog.

At the outset, "[r]easonable suspicion is a lower standard than probable cause, and '[w]hat is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.'" *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). In this case, Sergeant Ricard was a seven-year veteran of the Geary County Sheriff's Office with three years of prior law enforcement experience with the Junction City Police Department. Of particular relevance to this car stop, Sergeant Ricard was the K-9 handler

11

for the sheriff's office. His experience in illegal drug detection included a 10-week course taught by the Kansas Highway Patrol. Upon completion of this training, Sergeant Ricard and his K-9 were certified as a team to conduct patrol services and detect controlled substances. The K-9 was certified to detect marijuana, methamphetamine, cocaine, and heroin.

In assessing the totality of circumstances known to a law enforcement officer, our Supreme Court has instructed:

> "The totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicious appearances, but instead requires a determination whether all the circumstances justify the detention. The relevant inquiry is not whether particular conduct is innocent or guilty, but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. The totality of the circumstances standard prohibits a divide-and-conquer analysis under which factors that are readily susceptible to an innocent explanation are entitled to no weight." *State v. Schooler*, 308 Kan. 333, Syl. ¶ 8, 419 P.3d 1164 (2018).

In its extensive fact-finding, the district court identified several aspects of Sergeant Ricard's testimony regarding the officer's reasonable suspicion that Milla was engaged in illegal drug activity:

> "While walking up on the passenger side to contact the vehicle's occupants, [Sergeant] Ricard noticed in the rear third row seat, a large box of trash bags, a box of dryer sheets and two yellow 2-way radios. Upon making contact with the vehicle's occupants, the claimant Milla was identified as the driver of the vehicle. [Sergeant] Ricard asked for his driver's license and registration. While waiting on occupants to provide him the vehicle documentation, [Sergeant] Ricard asked some travel plan questions. The claimant Milla advised they were headed back to Colorado and they had been in Kentucky visiting a friend's sick mother. They had been in Kentucky for 2 days.

12

"[Sergeant] Ricard had the claimant Milla accompany him to his patrol vehicle and once seated, [Sergeant] Ricard called into dispatch to check on the defendant's driver's license status and criminal history. [Sergeant] Ricard testified at trial he was suspicious of other criminal activity based on the following factors: (1) two way radios are commonly used by drug traffickers as they will employ a second vehicle that is either a load vehicle, meaning it is loaded with drugs and/or large amounts of U.S. currency, or the second vehicle is an escort/decoy vehicle, which is meant to attract the attention of law enforcement to allow the load vehicle to pass unhindered; (2) the box of dryer sheets also raised red flags as dryer sheets [are] commonly used to mask the odor of drugs, either on the drugs themselves, or on drug proceeds; (3) the vehicle was a rental that had been rented in Colorado the day before to travel to Louisville, [KY] (approximately a 17 hour trip each way), making the trip implausible for the stated purpose of visiting a friend's sick mother; (4) the lack of luggage for two men, being a single small duffel bag; and (5) box of trash bags, which are commonly used to wrap drugs/drug proceeds. These suspicions were made by the Officer within a few minutes of making the traffic stop and before or during the call to dispatch for a [driver's license] check. At this point [Sergeant] Ricard already had a reasonable suspicion of another crime taking place."

There was substantial competent evidence to support the district court's factual findings and legal conclusions.

First, with regard to the two-way radios, Sergeant Ricard testified:

"[W]e've seen them before with people involved in criminal activity, if they have maybe a vehicle that's either following them or if they're transporting narcotics or currency so they can either notify that vehicle that's hauling illegal contraband of, you know, law enforcement being ahead of them or something to that effect."

Our Supreme Court has noted that the discovery of multiple cell phones in a stopped vehicle may provide relevant evidence of illegal drug activity although its weight is dependent on the particular circumstances. *Schooler*, 308 Kan. at 355-56.

13

Second, Sergeant Ricard testified that in his experience dryer sheets "are commonly used to conceal the odor of a controlled substance." Indeed, a box of dryer sheets in a motor vehicle may raise an inference of illegal drug activity. Our Supreme Court has recognized that air fresheners or strong fragrances when found in a rental vehicle may contribute to reasonable suspicion "because of its known use for masking drug odor." 308 Kan. at 353.

Third, inconsistent travel plans, vague travel plans, or unusual travel plans may contribute to reasonable suspicion of drug dealing. 308 Kan. at 354; *State v. DeMarco*, 263 Kan. 727, 739, 952 P.2d 1276 (1998). As discussed in *Schooler*:

> "'Discrepancies in travel plans or histories have been used as objective reasonable suspicion factors in other cases, depending on the nature of the discrepancy. . . .' Discrepancies that arouse suspicion include 'an individual's internally inconsistent statements [and] the inconsistencies between a passenger and driver's statements regarding travel plans.'
> "The Tenth Circuit has distinguished merely unusual travel plans, which do not contribute to reasonable suspicion, and 'bizarre, inconsistent and evasive' ones, which do. [Citations omitted.]" 308 Kan. at 354.

The *Schooler* court further noted that implausible travel plans such as those concerning when a person left a certain city could give rise to reasonable suspicion.

> "'For example, a police officer could reasonably believe a travel plan was implausible—and the person was lying—if that person claimed that he or she had left a certain city by car an hour ago if the officer pulled over that person, 200 miles from the city. To this extent, the factor seems noncontroversial: lies, evasions or inconsistencies about any subject while being detained may contribute to reasonable suspicion.' [Citation omitted.]" 308 Kan. at 354.

14

During Sergeant Ricard's conversation with Milla while processing the traffic violation, Milla advised that he and his passenger had been in Kentucky for two days visiting the sick mother of a friend. The rental documents for the vehicle, however, memorialized that the vehicle was rented for only a two-day rental in Colorado Springs, Colorado, at 9:01 a.m. on December 13, 2015—the day before the traffic stop. Yet, Sergeant Ricard stopped Milla in Geary County during Milla's return trip from Kentucky the following evening. Sergeant Ricard testified that the short turn-around time was suspicious because it is common for drug traffickers to unload contraband as quickly as possible in order to avoid detection by law enforcement officers. As calculated by Sergeant Ricard, without any stops along the way, the entire round trip would take about 34 hours, which meant that Milla could have been in Louisville for only eight hours—not two days as he had stated—before beginning his return trip to Colorado.

We also note Milla's acknowledgement in his appellate brief that "[c]ase law finds that driving a third-party vehicle, when combined with other factors, could lead to reasonable suspicion that a car is stolen or trafficking contraband. *United States v. Villa-Chapparro*, 115 F.3d 797, 802 (10th Cir. 1997)."

While Milla complains for the first time on appeal that Sergeant Ricard's questioning impermissibly extended the traffic stop, the district court found that Sergeant Ricard was appropriately processing the traffic stop violation while inquiring about the travel plans. These case facts mirror the facts in *Schooler*, wherein our Supreme Court held the travel plan "questioning did not impermissibly extend the stop because the questioning occurred concurrently with the tasks the deputy was performing to complete the stop and was justified by discrepancies between Schooler's story and the rental agreement." 308 Kan. at 347.

Obviously, Milla's account of the trip's duration did not conform to the rental-agreement documents. We agree with the district court's conclusion that evidence of

15

Milla's travel plans made "the trip implausible for the stated purpose of visiting a friend's sick mother."

Fourth, Sergeant Ricard observed a box of trash bags and a small gym bag in the cargo area of the vehicle. Courts have found these items, depending on the circumstances, support an inference of illegal drug activities. For example, trash bags are commonly used to transport larger quantities of illegal drugs. See *United States v. Gopie*, 347 Fed. Appx. 495, 498, 500 (11th Cir. 2009) (unpublished opinion) (suspects observed transferring large, heavy-looking black trash bags from the residence into another vehicle); *United States v. Gonzalez*, No. 06-CR-162-HDC, 2006 WL 8445003, at *4 (N.D. Okla. 2006) (unpublished opinion), *aff'd* 290 Fed. Appx. 80 (10th Cir. 2008) (unpublished opinion) (two trash bags concealed under the rear luggage cover in the cargo area of the Suburban).

Sergeant Ricard testified that he considered the small gym bag located in the cargo area as a factor in his determination of reasonable suspicion given that two individuals were in the car for an extended trip. "Reasonable suspicion is sometimes bolstered by the officer's observation that there is very little luggage in the automobile given the stated purpose of the trip." *United States v. Wisniewski*, 358 F. Supp. 2d 1074, 1092 (D. Utah 2005), *aff'd* 192 Fed. Appx. 749 (10th Cir. 2006) (unpublished opinion); *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) (noting that "the lack of luggage for an alleged two week trip" was a factor supporting a reasonable suspicion finding); see *United States v. Pulido-Vasquez*, 311 Fed. Appx. 140, 145 (10th Cir. 2009) (unpublished opinion) (lack of luggage even though two men claimed to be taking an overnight trip was a factor suggesting illegal activity).

Under the totality of the circumstances—especially the five factors relied upon by Sergeant Ricard as acknowledged by the district court—we are persuaded there was substantial competent evidence to support the district court's legal conclusion that

16

Sergeant Ricard had reasonable suspicion to briefly extend the traffic stop by deploying his K-9 to sniff the exterior of Milla's vehicle to investigate the presence of illegal drugs. The evidence seized was lawfully admitted at the trial.

## DOES SUBSTANTIAL COMPETENT EVIDENCE SUPPORT FORFEITURE OF THE CURRENCY?

In addition to challenging the constitutionality of the vehicle search, Milla contends: "The conclusions of fact made by the district court do not support the district court's legal finding that the money seized was drug proceeds by a preponderance of the evidence." Our standard of review in these matters is well-settled:

> "The standard of review for a forfeiture action where the trial court has made findings of fact and conclusions of law is to determine whether those findings are supported by substantial competent evidence and whether they support the trial court's conclusions of law.
> "In reviewing the trial court's decision, this court does not reweigh the evidence or pass on the credibility of the witness. If the evidence and all reasonable inferences drawn from it, when viewed from the perspective most favorable to the prevailing party, support the trial court's decision, that decision will be affirmed. [Citations omitted.]" *State v. 1990 Lincoln Town Car*, 36 Kan. App. 2d 817, 823, 145 P.3d 921 (2006).

As a general rule, in a forfeiture action, the State must prove by a preponderance of evidence that the claimant's interest in the property is subject to forfeiture under K.S.A. 2015 Supp. 60-4113(g). If the State meets its burden, the burden then shifts to the claimant to show by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture. K.S.A. 2015 Supp. 60-4113(g).

17

The Kansas forfeiture statute additionally provides:

> "(k) There shall be a rebuttable presumption, in the manner provided in subsection (a) K.S.A. 60-414, and amendments thereto, that any property of a person is subject to forfeiture under this act if the seizing agency establishes, by the standard of proof applicable to that proceeding, all of the following:
>
> (1) The person has engaged in conduct giving rise to forfeiture;
>
> (2) the property was acquired by the person during that period of the conduct giving rise to forfeiture or within a reasonable time after the period; and
>
> (3) there was no likely source for the property other than the conduct giving rise to forfeiture." K.S.A. 2015 Supp. 60-4112(k).

After considering the evidence at trial, the district court filed a memorandum decision consisting of several pages of factual findings and legal conclusions specifically relating to the issue of whether the $81,957 discovered in Milla's vehicle were proceeds from illegal drug activity. In particular, the district court focused on several evidentiary factors that, taken together, convinced the district court that the currency was the proceeds of illegal drug activity. We will consider those factors.

*Large Amount of Specially Packaged Currency*

The $81,957 recovered from Milla's vehicle was found in 16 bundles individually wrapped in dryer sheets and duct tape. As discussed earlier, Sergeant Ricard testified that dryer sheets "are commonly used to conceal the odor of a controlled substance." The use of a masking agent to conceal drug odor has been noted by our Supreme Court. See *Schooler*, 308 Kan. at 353.

The district court also cited legal precedents for the proposition that a large amount of currency packaged in bundles may be indicative of drug proceeds. In particular, the district court cited *United States v. $242,484.00*, 389 F.3d 1149, 1161-

18

1162 (11th Cir. 2004), wherein it was observed that "[w]rapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs."

Milla's trial testimony also validated the State's theory that the currency was drug proceeds. As noted by the district court: "The claimant Milla testified that he was taking the seized U.S. currency to buy a semi-truck, yet could not provide the name of the dealership he intended on visiting. Also, Milla, when originally asked during the traffic stop whether he had a large amount of U.S. currency, advised only Borges had U.S. currency." Finally, as observed by the district court: "When questioned, as to why he wrapped the seized currency in duct tape and dryer sheets [Milla] advised so the drug dogs wouldn't find it." In summary, there was substantial competent evidence provided in the form of Milla's testimony, Sergeant Ricard's expert testimony, and the packaging of the currency itself, to show that the currency was proceeds from illegal drug activity.

*K-9 Drug Alert*

As summarized by the district court: "[Sergeant] Ricard testified that he conducted a controlled sniff on the seized currency from the center console and the trash bag box, the seized currency that Milla claimed belonged to him. [Sergeant] Ricard testified [the K-9] alerted to the odor of drugs he is certified to detect." As the United States District Court for the District of Kansas observed in a similar case, "the drug dog's alert to the presence of controlled substances on the seized currency is entitled to probative weight." *United States v. $21,055.00 in U.S. Currency*, 778 F. Supp. 2d 1099, 1105 (D. Kan. 2011). At trial, Milla did not contest the training, experience, or accuracy of the K-9 or its handler, Sergeant Ricard. The K-9's alert upon sniffing the $81,957 was pertinent evidence that the currency derived from an illegal source.

*Milla's Inconsistent and Vague Testimony*

In its order, the district court highlighted aspects of Milla's testimony that were inconsistent and vague. In particular, Milla's testimony regarding the purpose for his travel to Kentucky, the origins of the bundled currency, and his explanations regarding his finances and bank records lacked credibility.

As discussed earlier, inconsistent, vague, or unusual travel plans have been found by courts to be a possible factor in an officer's development of reasonable suspicion of drug dealing. Here, Milla advised Sergeant Ricard that the purpose of his trip to Kentucky was to visit a friend's sick mother. At trial, however, Milla testified that he had the large sum of money in the vehicle because he was intending on purchasing a semi-trailer truck. As highlighted by the district court, however, during the traffic stop Milla did not mention "that he was looking to purchase a semi-truck, nor that he had gone to Louisville to purchase a semi-truck. On cross-examination, Milla could not advise the name of the website, nor the dealership he planned on visiting in Louisville." Milla's contradictory and vague trial testimony undermined the purported innocent use of the currency.

*Cell Phone Extraction of Videos and Photographs*

At trial, the State admitted evidence derived from Milla's cell phone containing various videos and pictures. As described by the district court, this evidence showed "the claimant Milla constructing an indoor marijuana grow house, a large number of marijuana plants in an indoor marijuana grow, a video of a marijuana trimming machine that was trimming pounds of marijuana, a picture of the claimant Milla wearing a marijuana beard, and pictures of large amounts of U.S. currency."

20

In response, Milla denied illegally growing marijuana, but he admitted to "giving 'John' marijuana to extract THC oil." Milla did not know John's last name, whether he was licensed to process marijuana, or what he did for employment.

The State produced Geary County Detective Bradley Rose to provide his expertise regarding illicit drug activities. As summarized by the district court:

"[Detective] Brad Rose testified that he was aware of how 'legal' marijuana dispensaries operate in Colorado and he advised that workers have to wear protective head gear, such as head covers, masks, gloves and booties. The pictures and videos show individuals in an indoor marijuana grow house who [are] not wearing any protective gear. [Detective] Rose also testified that based on the contents of the claimant Milla's cell phone . . . the seized U.S. currency was in fact drug proceeds."

Considered together, there was ample and substantial competent evidence derived from a download of Milla's cell phone to show the illicit source of the currency.

*Milla's Bank Records*

Considerable documentary evidence was admitted at trial. In particular, Milla's bank records were probative to cast doubt on Milla's claim that the bundled currency came from an innocent source. The district court cited several instances wherein Milla's testimony and bank records undermined his exculpatory explanation for the origins of the currency. For example, the district court found:

"Milla's bank records only show a December 10, 2015 deposit of [$101,000]. There is no withdrawal and Milla admitted at trial none of the seized currency came from the [$101,000] he received from the sale of his Florida home. *This directly contradicts Milla's pleadings* where he asserted part of the seized currency came from the sale of his Florida residence." (Emphasis added.)

21

Moreover, the district court found from the evidence that Milla's "legitimate income is woefully insufficient to explain the large amount of seized currency."

In summary, we conclude that the district court's legal conclusions regarding this forfeiture action were supported by substantial competent evidence. There was a preponderance of evidence that Milla's interest in the currency was subject to forfeiture under K.S.A. 2015 Supp. 60-4113(g). Additionally, while the State met its burden of proof, Milla failed to show by a preponderance of the evidence that his interest in the currency was not subject to forfeiture. See K.S.A. 2015 Supp. 60-4113(g). The district court did not err in granting the forfeiture judgment.

ATTORNEY FEES

For his final issue, Milla contends the district court erred in awarding the State attorney fees without making specific factual findings. In response, the State claims this motion was withdrawn prior to the district court making a ruling on the matter. Milla did not file a reply brief contesting this claim.

In the district court's memorandum decision, the court ordered the State to submit a request for approval of attorney fees within 10 days. Objections were to be filed 10 days thereafter, with the court issuing a ruling without oral argument unless specifically requested by either party. Our review of the record on appeal does not show any request by the State for attorney fees, any objection by Milla, any withdrawal of a motion for attorney fees by the State, or a ruling by the district court. This issue is moot. See *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016).

Affirmed.